831 N.E.2d 215 (2005)
C.C., Appellant-Defendant,
v.
STATE of Indiana, Appellee.
No. 49A02-0412-JV-1072.
Court of Appeals of Indiana.
July 22, 2005.
*216 Steven J. Halbert, Indianapolis, for Appellant.
Steve Carter, Attorney General of Indiana, Maureen Ann Bartolo, Deputy Attorney General, Indianapolis, for Appellee.

OPINION
SULLIVAN, Judge.
C.C. appeals from the dispositional order following his admission to the delinquent act of disorderly conduct. He presents two issues for our review, which we restate as: (1) whether the trial court abused its discretion in ordering C.C. committed to the Department of Correction, and (2) whether the trial court improperly imposed costs and fees.
We affirm.
C.C. is a seventeen-year-old male who is in the care of his grandmother. He has a history with the juvenile justice system which goes back many years. The juvenile court had ordered many different types of rehabilitation for C.C., including formal probation, placement at the Kokomo Academy, and placement at the Department of Correction. Following a commitment to the Department of Correction for a handgun offense, C.C. was released on August 23, 2004 on temporary leave and placed in the Going Home Re-Entry Court Program. This program allows youths to live at home, go to school, work, and rehabilitate themselves with counseling and other assistance.
On September 27, 2004, C.C. and several other students got into a fight with another student at Arlington High School. A petition was filed by the State alleging that C.C. was delinquent for committing the acts which would have been two counts of Class A misdemeanor battery and one count of Class B misdemeanor disorderly conduct if committed by an adult. C.C. and the State submitted a plea agreement, which was accepted by the court, that C.C. would admit that he engaged in the act which would be disorderly conduct in exchange for the dismissal of the two counts which would have been battery if committed by an adult. Following this agreement, the juvenile court ordered that C.C. be placed with the Department of Correction to be sent to the Boys School. It is from this order which C.C. appeals.
The choice of the specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court and will be reversed if there has been an abuse of that discretion. E.L. v. State, 783 N.E.2d 360, 366 (Ind.Ct.App.2003). The juvenile court's discretion is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition. *217 Id. An abuse of discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. Id.
Indiana Code § 31-37-18-6 (Burns Code Ed. Repl.2003) sets forth several factors a juvenile court must consider when entering a dispositional decree. It provides:
"If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
(1) is:
(A) in the least restrictive (most family like) and most appropriate setting available; and
(B) close to the parents' home, consistent with the best interest and special needs of the child;
(2) least interferes with family autonomy;
(3) is least disruptive of family life;
(4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian." Id.

C.C. asserts that the juvenile court did not enter a disposition which was the "least restrictive (most family like)" and failed to place him in the "most appropriate setting available" which was consistent with the "best interests and special needs" of C.C. Appellant's Brief at 4. Rather, C.C. argues that the trial court followed a policy in which any juvenile who had been adjudicated a delinquent after being in the re-entry program would be sent to the Department of Correction.
In E.L., supra, this court reviewed the situation in which a juvenile court employed the presumption of recommitment of a juvenile to the Department of Correction after a previous commitment. There, the magistrate's comments revealed that she felt constrained by the court's policy of recommitment and began with a strong presumption in that regard. This court noted that while recommitment may ultimately be the appropriate disposition, applying a presumption of recommitment "runs the risk of frustrating the rehabilitative goals of the juvenile justice system and necessarily shifts the focus away from less restrictive alternatives." 783 N.E.2d at 367. The court then concluded that the juvenile court's policy, which created a presumptive disposition, runs counter to the court's duty to make an individualized determination in each case. Id. After reviewing the facts, this court concluded that the juvenile court abused its discretion in ordering recommitment to the Department of Correction because less restrictive options existed for the rehabilitation of E.L. and recommitment was not in E.L.'s best interests. Id. at 367-68.
When ordering that C.C. be committed to the Department of Correction, the juvenile court stated:
"In reviewing the addendum report, I will note his history with this Court. I will note the number of services that have been offered and available to him. He has been given certain things that other people have not been given. He has been given an opportunity to participate in the re-entry program. That is a gift. I am satisfied that he was told that there would be a strong potential that he would be re-committed to the Department of Correction, if he found himself in additional trouble. He has found himself in additional trouble. I have considered some alternative placements *218 for him, and I have considered the options that the Probation Department is recommending. I cannot get beyond the fact that we have just offered [C.C.] so many things and he has failed. I'm unwilling to further eviscerate this program of re-entry Court. Other people may be willing to say, `Well we'll send you if you screw up.' And then come back and say, `We don't think you should go back.' I am very satisfied that you knew if you stumble again, if you make a poor choice again, you knew you were going back to Boys School. (Record needs to reflect that the Respondent is nodding his head in an affirmative fashion.) I am unwilling to not do what is in his best interest. I believe we send a dangerous mixed message, not just to him, but to everyone else, that we choose to select to receive this gift of re-entry Court. He has taken this gift and squandered it. There is a price to be paid for squandering gifts that you are given. That price will be the following; I am again going to award guardianship to the Department of Correction with a recommendation it be for a period of twelve months. While you are there, I will recommend you receive educational counseling so you don't fall further behind in your studies, and also, anger management counseling to further help you. I am also going to make a note in this, that you will not be considered for re-entry Court again. Perhaps we need to do a better job of selecting who we choose to give these gifts to, because you weren't a good choice. But I am unwilling to allow you to participate in re-entry Court to screw up and then to continue on your way, that's not how it works. You were on parole, you screwed up, you go back. And I think the sooner you get that through your head, perhaps you'll realize when you're an adult. When you're an adult, and you are on parole and you screw up, you go back to prison. It works the same way here, and the sooner I can get that across to you, your mother and all of your counselors, and your therapists, I think the better. Grandmother ... Don't, put your hand down. You are going back to Boys School. We were unsuccessful. We tried hard. We offered you everything under the sun and you squandered it. And I am frustrated and I know your grandmother is heart broken and frustrated, but this is one on you and you should've done better, and God help you in the future." Transcript at 12-14 (emphasis supplied).
C.C. argues that the emphasized language from the above quotation indicates that a presumption of recommitment to the Department of Correction was applied in his case. While the language does hint at the existence of a presumption in which repeat offenders are sent to the Department of Correction without any consideration of their behavior, the remaining language belies that point. The juvenile court focused upon the repeated attempts to assist C.C. in correcting his behavior and his awareness that he would be sent to the Boys School if he had any further problems. Furthermore, the juvenile court stated its opinion that it was not in C.C.'s best interest to be allowed to violate the conditions of his placement once again and not receive a more severe punishment. Consequently, we are unwilling to hold that the juvenile court applied a presumption that C.C. should be remanded to the Department of Correction. Rather, it made that decision based upon C.C.'s repeated involvement with the juvenile justice system and the failures to rehabilitate him in the previous attempts.[1]
*219 In that regard, this case in not unlike K.A. v. State, 775 N.E.2d 382 (Ind.Ct.App.2002), trans. denied. In that case, K.A. had punched another person while at Broad Ripple High School. K.A. was suspended from school as a result, but in violation of her suspension, she returned to school property three days later. K.A. was denied entry into the school and fled from a law enforcement officer who tried to stop her. She was charged with battery, trespass, and two counts of resisting law enforcement. She admitted the charges of battery and criminal trespass in exchange for the dismissal of the resisting law enforcement charges. K.A. was placed on formal probation, placed at Lutherwood Residential Treatment Center, and ordered to comply with a plan of treatment and rehabilitation. Within a month, it was alleged that K.A. had violated her probation by failing to cooperate, participate, and complete the court ordered placement at Lutherwood. K.A. admitted the probation violation and was returned to Lutherwood. However, K.A. was warned that should she get into further trouble she would be placed at the Girls School.
Over the next month, K.A. spent time with a foster family that informed the court that it wished to take her upon her release from Lutherwood. Less than one month later, it was again alleged that K.A. had violated her probation. K.A. admitted the violation and during the hearing for the disposition, the guardian ad litem noted that the foster family had requested that K.A. be placed with them. The juvenile court denied that request and ordered that K.A. be committed to the Department of Correction for placement in the Girls School for a period of six months.
In reviewing the placement of K.A., this court noted that I.C. § 31-37-18-6 required that the juvenile court select the least restrictive placement in most situations. 775 N.E.2d at 386. However, we also recognized that the statute allows a more restrictive placement in certain circumstances; specifically, when the best interest of the child is better served by a more restrictive placement. Id. at 386-87. Turning to the facts of the case, the record revealed that K.A. was given several chances to alter her behavior before she was committed to the Department of Correction. Id. at 387. She failed in that endeavor, even after being warned that a further violation would result in her placement at the Girls School. Id. This court then held that the juvenile court did not abuse its discretion in placing K.A. at the Girls School. Id.
We see little difference in the facts before us and those before the court in K.A. In each instance, the juveniles had been subject to several placements by the juvenile court and had failed to alter their behavior. In both cases, the juvenile court had issued a warning that further troublesome behavior would result in placement with the Department of Correction. Nonetheless, each juvenile was involved in actions which placed them before the juvenile court once again. Given these facts, just as in K.A., we cannot say that the juvenile court abused its discretion in committing C.C. to the Department of Correction for placement in the Boys School.
C.C. also asserts that the juvenile court erred in ordering that C.C. pay probation and other fees without determining if he was indigent. When making this argument in his brief, C.C. cites to the appendix for support for his claim that he was ordered to pay fees, but he did not provide a specific page number where that information can be found. In reply, the State asserts that no such order was made and that C.C. has provided no basis to make this claim. After reviewing the transcript of the disposition hearing and the written *220 dispositional order, we agree with the State. In the dispositional order, the court ordered that:
"Payment of probation fees, other fees, and status set for Restitution Hearing on 1/11/2006 at 9:30:00 AM in Court # 1. All fees ordered must be paid by the next Court hearing. If only fees are ordered and are paid, parties need not appear at the time if all are paid." Appendix at 9.
As well as we can ascertain the situation, the juvenile court has not yet ordered the payment of any fees. It appears that matter will be addressed at the hearing to be held on January 11, 2006. We assume that C.C. will be allowed to address the issue of indigency at that time.
The dispositional order is affirmed.
NAJAM, J., and RILEY, J., concur.
NOTES
[1] The record reflects that C.C. has had several true findings of delinquent conduct.