C.C., A Child Alleged to be Delinquent, Appellant-Respondent,
v.
STATE OF INDIANA, Appellee-Petitioner.
No. 57A04-0604-JV-182
Court of Appeals of Indiana.
December 18, 2006
SUSAN K. CARPENTER, Public Defender of Indiana, AMY K. KAROZOS, Deputy Public Defender, Indianapolis, Indiana, ATTORNEYS FOR APPELLANT.
STEVE CARTER, Attorney General of Indiana, MONIKA PREKOPA TALBOT, Deputy Attorney General, Indianapolis, Indiana, ATTORNEYS FOR APPELLEE.

MEMORANDUM DECISION
BAKER, Judge.
Appellant-respondent C.C. appeals his placement in the Department of Correction (DOC) following the juvenile court's true finding that he committed an act that would constitute the crime of theft if it had been committed by an adult. Specifically, C.C. contends that his placement with the DOC was not warranted because this was his first contact with the juvenile justice system and he suffers from a diagnosed mental disorder. Concluding that the juvenile court did not abuse its discretion when it placed C.C. with the DOC, we affirm.

FACTS
On October 20, 2005, fifteen-year-old C.C., without permission, took the emblem from a Mercedes-Benz vehicle that was parked outside a church in Kendallville. C.C. intended to sell the emblem for money, but his mother contacted the police after she became aware of the incident. On November 28, 2005, the State filed a delinquency petition and alleged that C.C. committed what would be class D felony theft if committed by an adult. The trial court held a hearing on January 3, 2006, and C.C. admitted the allegations of the delinquency. During the hearing, C.C. testified that he occasionally smoked marijuana and that he had been in approximately fifty fights, some of which involved knives.
The trial court held a dispositional hearing on February 7, 2006. In anticipation, the probation department filed a predispositional report, which included a psychiatric evaluation by Dr. Frank Shao following C.C.'s stay at the Parkview Behavioral Health facility from January 20, 2006, to January 25, 2006. In the psychiatric evaluation, Dr. Shao concluded that C.C. had a "history of impulse control disorder" and "a possible history of conduct disorder." Appellant's App. p. 57. After analyzing the report and talking with Dr. Shao, C.C's probation officer recommended that C.C. be placed on supervised probation for one year because this was his first referral to the juvenile justice system. The trial court stated that the evidence presented at the predispositional hearing indicated that C.C.'s parents have had a difficult time controlling him, that he "needs to be in a place where he is going to have intensive 24 hour a day supervision and treatment[,]" and "in a place where society does not have to be concerned that he is going to run amuck some time [sic]." Tr. p. 34. The trial court made C.C. a ward of the DOC and ordered that he be placed in an institution that would "provide him with the most intensive psychiatric and psychological care possible and also an institution which will provide him with intensive drug and alcohol counseling . . . ." Id. at 36. C.C. now appeals.

DISCUSSION AND DECISION
C.C. argues that the trial court erred by placing him with the DOC. Specifically, C.C. argues that this placement does not comply with Indiana Code section 31-37-18-6 because it is not the least restrictive disposition, this is his first true finding, and he suffers from a diagnosed mental disorder.
In determining whether the juvenile court properly placed C.C. with the DOC, we note that the choice of the specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court and will only be reversed if there has been an abuse of that discretion. E.L. v. State, 783 N.E.2d 360, 366 (Ind. Ct. App. 2003). The juvenile court's discretion is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition. C.C. v. State, 831 N.E.2d 215, 216-17 (Ind. Ct. App. 2005). An abuse of discretion occurs when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions that can be drawn therefrom. Id. Hence, the juvenile court is accorded wide latitude and great flexibility in its dealings with juveniles. C.T.S. v. State, 781 N.E.2d 1193, 1203 (Ind. Ct. App. 2003).
Indiana Code section 31-37-18-6 sets forth the following factors that a juvenile court must consider when entering a dispositional decree:
If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
(1) is:
(A) in the least restrictive (most family like) and most appropriate setting available; and
(B) close to the parents' home, consistent with the best interest and special needs of the child;
(2) least interferes with family autonomy;
(3) is least disruptive of family life;
(4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.
Without question, the statute requires the juvenile court to select the least restrictive placement in most situations; however, the statute contains language that reveals that a more restrictive placement might be appropriate under certain circumstances. K.A. v. State, 775 N.E.2d 382, 387 (Ind. Ct. App. 2002). That is, the statute requires placement in the least restrictive setting only "[i]f consistent with the safety of the community and the best interest of the child." I.C. § 31-37-18-6. Thus, the statute recognizes that in certain situations the best interest of the child is better served by a more restrictive placement. K.A., 775 N.E.2d at 386-87.
Here, in addition to the true theft finding, the record reflects that C.C. admitted to using marijuana and being involved in approximately fifty fights, some of which involved knives. Tr. p. 9-10. C.C. also told Dr. Shao that he had abused other substances, including Xanax, Adderall, and alcohol. Appellant's App. p. 57. The predispositional report indicates that Dr. Shao felt that C.C. could be diagnosed as "borderline antisocial personality disorder (if he were an adult), and that [he] needs to be kept on a `tight leash,' otherwise he may go `wild.'" Id. at 37.
The record also reflects that less restrictive options were not appropriate for C.C. The trial court noted that it could not release C.C. to his parents' care because they had a difficult time controlling him and his aggressive outbursts could harm them and other members of society. The trial court also noted that C.C. was "not fine in a restrictive environment like a hospital where he was indeed medicated and supervised [because he was also aggressive there]." Tr. p. 35. Therefore, the trial court found that C.C. needed "very[,] very intensive care and . . . to be segregated from opportunities to do violence and damage. The only way [to] do that is to made him a ward of the [DOC]." Id.
In light of the above, it is clear that C.C. requires a secure and structured environment to protect society and to impress upon him the need to reform his conduct. While Dr. Shao did state that there was no "clear documentation to support incarcerating someone with [C.C.'s] diagnosis . . . ," it was within the trial court's discretion to place C.C. with the DOC to keep him on a "tight leash" and prevent him from acting "wild." Appellant's App. p. 37. Furthermore, in some instances, confinement may be one of the most effective rehabilitative techniques available. B.K.C. v. State, 781 N.E.2d 1157, 1172 (Ind. Ct. App. 2003). "A delinquent child's first exposure to the consequences he will face should he continue to break the law may indeed be the best treatment available in helping a young person readjust his values and priorities in life." Id. In light of C.C.'s violent nature and the trial court's finding that less restrictive options were not appropriate, we conclude that the juvenile court did not abuse its discretion when it placed C.C. with the DOC.
The judgment of the juvenile court is affirmed.
ROBB, J., and BARNES, J., concur.