## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 27 2017, 9:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Robert J. Hardy
Hardy Law Office
Auburn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

E.H.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

December 27, 2017

Court of Appeals Case No.
57A05-1708-JV-2047

Appeal from the Noble Superior Court

The Honorable Robert E. Kirsch, Judge

Trial Court Cause No.
57D01-1612-JD-50

**Bradford, Judge.**

# Case Summary

On December 14, 2016, Appellant-Petitioner the State of Indiana ("the State") filed a delinquency petition alleging that Appellee-Respondent E.H. had committed what would be the following crimes if committed by an adult: (1) Level 5 felony dealing in marijuana, (2) Class B misdemeanor possession of marijuana, and (3) Class C misdemeanor possession of paraphernalia. On July 5, 2017, E.H. admitted that he had committed what would be Level 5 felony dealing in marijuana if committed by an adult. Following a dispositional hearing, the juvenile court committed E.H. to the Indiana Department of Correction ("DOC") for placement in the Indiana Boys' School. On appeal, E.H. challenges his commitment to the DOC, arguing that he should have received a less restrictive placement. We affirm.

# Facts and Procedural History

In the Fall of 2016, school officials initiated an investigation into drug use by students at West Noble Middle and High Schools. During the course of this investigation, a number of the students who were questioned indicated that they had purchased marijuana from E.H.[1] Based on this information, School Resource Officer Brandon Chordas[2] obtained a search warrant for E.H.'s home.

---

[1] At the time of the investigation, E.H. was sixteen years old.

[2] Officer Chordas is employed by the Noble County Sheriff's Department and has been assigned to his placement as a school resource officer since the beginning of the 2014/2015 school year.

[3]  During execution of the search warrant, investigating officers found a large quantity of marijuana. They also found drug paraphernalia, scales, and wax marijuana. The items were all found in an upstairs bedroom "where [E.H.] was located." Tr. Vol. II, p. 17.

[4]  E.H. cooperated with the officers and informed Officer Chordas as follows:

> That he goes to Ft. Wayne and he meets a guy by the name of T and buys a pound of marijuana at a time, usually, roughly a pound of marijuana for anywhere between Twenty-Five Hundred ($2,500.00) and Twenty-Seven Hundred Dollars ($2,700.00) a pound depending on the market and then he takes it home and divvies it up from there.

Tr. Vol. II, pp. 21–22. E.H. "divvies" up the marijuana by breaking "it down into quarter pound" increments. Tr. Vol. II, p. 22. E.H. then sells each quarter pound increment for "anywhere from $750.00 to $900.00 [d]ollars." Tr. Vol. II, p. 22. E.H. also indicated that, on one occasion, he had "gone out toe [sic] Colorado with his brother to purchase" edible marijuana products. Tr. Vol. II, p. 23. E.H. estimated that he had been selling marijuana for approximately six months and provided the names of numerous individuals to whom he had sold marijuana.

[5]  On December 14, 2016, the State filed a delinquency petition alleging that E.H. had committed what would be the following crimes if committed by an adult: (1) Level 5 felony dealing in marijuana, (2) Class B misdemeanor possession of marijuana, and (3) Class C misdemeanor possession of paraphernalia. On July 5, 2017, E.H. admitted that he had committed what would be Level 5 felony

dealing in marijuana if committed by an adult. Following his admission, E.H. was placed on home detention until his dispositional hearing. E.H. submitted to a drug screen on August 4, 2017. The results of this screen tested positive for methamphetamine and amphetamine.

[6] During the dispositional hearing, Paul Winebrenner, the probation officer assigned to E.H.'s case, made the following recommendation:

> So, my recommendation is for Boy's School. I think it is most appropriate and affords him the opportunity to get an education. He will have the opportunity to get substance abuse counseling if he or they believe that that is an issue, and it will give him the ability to daily examine his choices and how they will affect his life, his family's life and his future. In doing community supervision I am not sure that it is a daily focus. As a matter of fact, I know it is not a daily focus because he is not going to counseling every single day. So, I do believe that that is the most appropriate option available to the Court and I recommend that the Court adopt that recommendation.

Tr. Vol. II, pp. 80–81. In making this recommendation, Winebrenner noted (1) the seriousness of E.H.'s offense, (2) E.H.'s minimal compliance with the terms of his home detention, (3) E.H.'s failure to acknowledge that he had a substance abuse problem, and (4) the difficulty in determining whether E.H. was being truthful during assessments. Winebrenner further noted E.H.'s assertion that "I know that I am on house arrest, but guess what I am going to do what I want." Tr. Vol. II, p. 80.

[7] Following the dispositional hearing, the juvenile court committed E.H. to DOC for placement in the Indiana Boys' School. In committing E.H. to DOC, the juvenile court made the following statement:

> Your sister indicated that she still has hope, well we all have hope. Without hope we are nothing. We all have hope. We all want you to recover from any addiction that you are suffering from and I do not look at Boys' School as being punishment, not direct punishment. There may be a punitive aspect to it, but no Boys' School is one of the tools available to the juvenile justice system that provides us an opportunity to provide you with the structure, supervision, direction, programs that are necessary to recover. It is one of the many things that we can look at. I don't like the idea, I mean I like to avoid taking somebody, a young man out of the community or out away from his family, but on occasion that is necessary. In this particular case, I believe it is necessary. I believe that we've reached a point where you have demonstrated through your positive drug screen that you have a very serious problem, number one, uh, that that problem exists even while you are in the community and we've got you on home detention and we, uh, you are in treatment but yet you are still using. And also, then tied with the nature of the offense itself, the dealing in marijuana and the scope of that enterprise, uh, I don't think I can keep you in the community at this point in time. Now once again, Boys' School is just a treatment option and in my opinion and at this point it is the best treatment option I have because at least at Boys' School I number one know you are going to get an education, number two, I know you are going to be safe and you are not going to have access to methamphetamine at least that is my sincere hope. Uh, you are going to get treatment for your addiction. That is the best thing I have available to me at this time. So, the Court is going to enter a commitment to the [DOC] for placement of the juvenile at the Indiana Boys' School.

Tr. Vol. II, pp. 90–91.  This appeal follows.

# Discussion and Decision

[8] E.H. contends that the juvenile court abused its discretion in committing him to the DOC for placement at the Indiana Boys' School.  In determining whether the juvenile court properly placed E.H. with the DOC, "we note that the choice of the specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court and will only be reversed if there has been an abuse of that discretion."  *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008) (citing *E.L. v. State*, 783 N.E.2d 360, 366 (Ind. Ct. App. 2003)).

> The juvenile court's discretion is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition.  *C.C. v. State*, 831 N.E.2d 215, 216–17 (Ind. Ct. App. 2005).  An abuse of discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual inferences that can be drawn therefrom.  *Id.* Hence, the juvenile court is accorded wide latitude and great flexibility in its dealings with juveniles.  *C.T.S. v. State*, 781 N.E.2d 1193, 1203 (Ind. Ct. App. 2003).

*Id.*

[9] Indiana Code section 31-37-18-6 sets forth the following factors that a juvenile court must consider when entering a dispositional decree:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
> (1) is:
>> (A) in the least restrictive (most family like) and most appropriate setting available; and
>> (B) close to the parents' home, consistent with the best interest and special needs of the child;
> (2) least interferes with family autonomy;
> (3) is least disruptive of family life;
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

As we noted in *J.S.*, Indiana Code section 31-37-18-6 requires the juvenile court to select the least restrictive placement in most situations. 881 N.E.2d at 28–29. However, the statute contains language that reveals that a more restrictive placement might be appropriate under certain circumstances. "That is, the statute requires placement in the least restrictive setting only "[i]f consistent with the safety of the community and the best interest of the child."' *Id.* at 29 (quoting Indiana Code § 31-37-18-6). "Thus, the statute recognizes that in certain situations the best interest of the child is better served by a more restrictive placement." *Id.* (citing *K.A. v. State*, 775 N.E.2d 382, 386–87 (Ind. Ct. App. 2002)).

[10] E.H. claims that the juvenile court abused its discretion in committing him to the DOC because a less restrictive option, *i.e.*, home detention, was available. The record, however, shows that the juvenile court found that given the

circumstances of this case, home detention was not a viable option. First, E.H.'s criminal actions negatively impacted the community. E.H. admitted to selling relatively large quantities of marijuana. E.H. also admitted that a number of his customers were juveniles. The record reveals that at least some of these juveniles have faced suspension or expulsion from school because of their purchases of marijuana from E.H.

[11] Second, E.H. was placed on home detention following his admission and prior to the dispositional hearing. During this time, he showed minimal compliance with the terms of his home detention and tested positive for drugs, including methamphetamine. E.H. also failed to acknowledge that he had a substance abuse problem. Service providers expressed difficulty in determining whether E.H. was being truthful during assessments. E.H. also displayed a disregard for the conditions of his home detention, telling his probation officer "I know that I am on house arrest, but guess what I am going to do what I want." Tr. Vol. II, p. 80. Third, although no formal legal action had previously been taken, E.H. had been referred to the Noble County Probation Department on three separate occasions before the State initiated the instant juvenile proceedings.

[12] The juvenile court expressed its reluctance to remove a juvenile from his family, but found that such was necessary here. Based on our review of the record, we cannot say that such a finding constituted an abuse of the juvenile court's discretion.

[13] The judgment of the juvenile court is affirmed.

Robb, J., and Crone, J., concur.