## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 05 2019, 10:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Daniel J. Vanderpool
Vanderpool Law Firm, PC
Warsaw, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| T.B., *Appellant-Defendant,* | September 5, 2019 |
| v. | Court of Appeals Case No. 19A-JV-57 |
| | Appeal from the Wabash Circuit Court |
| State of Indiana, *Appellee-Plaintiff* | The Honorable Robert R. McCallen III, Judge |
| | Trial Court Cause No. 85C01-1807-JD-38 |

**Baker, Judge.**

[1] T.B. appeals the juvenile court's dispositional order committing him to the Indiana Department of Correction (DOC), arguing that the dispositional order failed to comport with statutory requirements and that the juvenile court erred when it did not consider less restrictive alternatives for placement.[1] Finding no error, we affirm.

# Facts

[2] Seventeen-year-old T.B. has a long history with the correctional system. On March 24, 2016, the State filed a delinquency petition, alleging that T.B. was delinquent for committing acts that would be Class B misdemeanor criminal mischief, Class B misdemeanor possession of marijuana, and Class C misdemeanor possession of paraphernalia had they been committed by an adult. On May 2, 2016, T.B. admitted to the possession of paraphernalia and marijuana allegations and was placed on probation for six months. On June 2, 2016, after the State filed a petition to modify T.B.'s prior dispositional decree, T.B. admitted to violating the terms of his probation by ignoring his parents' demands and breaking probationary curfew. The juvenile court extended T.B.'s probationary period by three months. Then, on September 6, 2016, after T.B.

---

[1] Additionally, T.B. asks this Court to consider arguments under an unrelated cause number involving the revocation of his probation. We decline to address this matter for three reasons: (1) despite any claim by T.B. that this Court's consideration of the revocation matter "would not . . . prejudice[]" the State, appellant's br. p. 5, this is not the standard by which we determine whether a matter is ripe for appeal; (2) T.B. has not filed a Notice of Appeal for this matter pursuant to Indiana Appellate Rule 9(A)(1) and has not moved to consolidate his appeals pursuant to Appellate Rule 38(A); and (3) even if we were to ignore these procedural shortcomings, T.B. offers no support in his brief for why he is appealing the juvenile court's revocation of his probation. Thus, the matter is waived.

had been suspended from school, T.B. and T.B.'s father agreed, as sanction, that T.B. would participate in school-based counseling services provided by Lifeline Youth & Family Services. Later, on March 20, 2017, the juvenile court ordered that T.B. be committed to White's Residential and Family Services for behavioral services. Finally, T.B. was released from White's Residential and Family Services to the care and custody of his father on December 14, 2017.

[3] T.B.'s history with the juvenile courts did not stop there. On May 30, 2018, the State filed a delinquency petition, alleging that T.B. was delinquent for committing acts that would be Class A misdemeanor resisting law enforcement and Class B misdemeanor disorderly conduct had they been committed by an adult. On June 18, 2018, T.B. admitted to these allegations and was placed on probation, with a suspended commitment to the Indiana Boys School.[2]

[4] Then, just ten days later on June 28, 2018, the State filed another delinquency petition, alleging that T.B. was delinquent for committing acts that would be Level 4 felony burglary, Class A misdemeanor conversion, Class A misdemeanor theft, and two counts of Class B misdemeanor criminal mischief had they been committed by an adult. Following a fact-finding hearing on October 22, 2018, T.B. admitted to the criminal mischief allegations and that he had been in possession of a firearm, a violation of the terms of his probation.

---

[2] The Indiana Boys School is a correctional institution for adolescent boys that is part of the DOC. "Indiana Boys School" and "DOC" are used interchangeably throughout this opinion.

The juvenile court set final disposition of the matter for November 19, 2018, and ordered that a predispositional report be completed.

[5] T.B. failed to appear for his November 19, 2018, dispositional hearing. Police officers discovered T.B. with marijuana the next day, November 20, 2018, at a residence near his home. The juvenile court continued the dispositional hearing until December 10, 2018, at the conclusion of which the juvenile court studied the predispositional report and stated the following:

> Well, I guess the biggest thing that troubles me is, on June 18th, of 2018, in this courtroom, this disposition that was a placement to the DOC suspended, was by agreement. Um, so this has been a history and a series. It's, uh, not a hard case for me to figure out, just because that's what he agreed to. That's what I had ordered. He knew he had to walk out of here and be clean completely. And he wasn't. So Boys School is the commitment I'm going to order today. All right. Next case.

Tr. Vol. II p. 24. The juvenile court ultimately ordered that T.B. be committed to the Indiana Boys School.

[6] In its final dispositional order, the juvenile court stated that it had "reviewed the predispositional report, the current child support obligation worksheet, and . . . statements and evidence presented[.]" Appellant's App. Vol. II p. 9. Additionally, in that order, the juvenile court stated that it had considered the interests of the child and public, alternative treatment options, the liabilities and financial responsibilities of the parents/guardians, and T.B.'s risk assessment. *See id.* at 9-13. T.B. now appeals.

# Discussion and Decision

## I. Dispositional Order

First, T.B. argues that the juvenile court's dispositional order failed to comport with statutory requirements.

The choice of a specific disposition of a juvenile delinquent is within the sound discretion of the juvenile court, and that decision will not be reversed absent a showing that the juvenile court's actions are clearly erroneous and against the logic and effect of the facts and circumstances before it. *E.H. v. State*, 764 N.E.2d 681, 684 (Ind. Ct. App. 2002).

At the time of placement, the juvenile court is required to enter a dispositional decree that:

> (1) is:
>
>> (A) in the least restrictive (most family like) and most appropriate setting available; and
>>
>> (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

Ind. Code § 31-37-18-6. Additionally, "[t]he juvenile court shall accompany the court's dispositional decree with written findings and conclusions upon the record concerning approval, modification, or rejection of the dispositional recommendations submitted in the predispositional report[.]" I.C. § 31-37-18-9(a).

[10] T.B. contends that he "did not receive the benefit of a consideration of those [statutory] factors," appellant's br. p. 12, based on the predispositional report and the short statement made by the juvenile court judge at the end of the December 10, 2018, hearing. In other words, T.B. believes that his placement in the DOC was a "foregone conclusion," *id.*, and that the juvenile court failed to adequately review and comment on the statutory factors.

[11] T.B. focuses solely on the juvenile court judge's colloquy at the end of that hearing in concluding that the judge placed T.B. in the DOC without adequate consideration. In reality, however, the juvenile court entered a written dispositional order that covered all of the statutory factors and explained why it had reached the decision to commit T.B. to the Indiana Boys School. To supplement the dispositional order, the juvenile court heavily relied upon the recommendations from T.B.'s probation officer in the predispositional report.

[12] In the final dispositional order and in the predispositional report, there were findings that T.B. had "commit[ed] new delinquent acts while under the supervision of the Wabash County Probation Department." Appellant's App. Vol. II p. 37. Moreover, the juvenile court and probation officer found that T.B.

was at a high risk of reoffending given his previous correctional history and that all efforts for non-DOC rehabilitative care had failed to assist T.B. Specifically, the probation officer concluded that:

> . . . for the safety and welfare of [T.B] and the community, as well as, the fact that all prior rehabilitative efforts at the local level have been unsuccessful, this Officer recommends that [T.B.] be placed at the Indiana Department of Correction (Boys School). Additionally, this Officer would recommend that [T.B.] be ordered to pay restitution as directed by probation.

*Id.* at 36.

So yes, while the juvenile court judge's short colloquy with T.B. explaining why T.B. was being placed in the DOC seems conclusory, the order clearly shows that the juvenile court reviewed and considered numerous sources of information before reaching its result. There is ample evidence showing that the juvenile court did, in fact, consider all of the aforementioned statutory factors it was required to review before placing T.B. in the DOC. As such, there is no error.

# II. Commitment to DOC

Next, T.B. argues that the juvenile court erred when it committed him to the DOC because it should have considered less restrictive alternatives for placement, but failed to do so.

We will reverse a juvenile court's placement of a delinquent minor only if the decision is clearly against the logic and effect of the facts and circumstances

before it. *C.C. v. State*, 831 N.E.2d 215, 216-17 (Ind. Ct. App. 2005). The choice of a disposition for a juvenile is within the sound discretion of the juvenile court, and it is accorded wide flexibility in making that judgment. *E.L. v. State*, 783 N.E.2d 360, 366 (Ind. Ct. App. 2003). That disposition is subject, however, to the statutory considerations of the welfare of the child, the community's safety, and the policy of favoring the least harsh disposition. *Id.*

[16] Indiana Code section 31-37-18-6(1) states that a juvenile court shall enter a dispositional decree that is "in the least restrictive (most family like) and most appropriate setting available; and . . . [is] consistent with the best interest and special needs of the child[.]" T.B. argues that the DOC was not the most appropriate setting available due to his behavioral issues and his need for further counseling, and therefore, his placement in the Indiana Boys School was not consistent with his best interest and special needs.

[17] While the goal of child placement within the juvenile system is rehabilitation and not punishment, *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010), the ultimate decision to place T.B. in the DOC was still appropriate, and the juvenile court did not err by doing so. When presented with multiple opportunities for rehabilitation over the course of roughly three years, T.B. has shown few signs of progress at any placement. T.B. has violated his probation by disobeying his parents, staying out past the probationary curfew, and unlawfully possessing a firearm. Instead of immediately revoking probation and issuing a harsher sanction, *M.J.H. v. State*, 783 N.E.2d 376, 377 (Ind. Ct. App. 2003) (finding that "violation of a single condition of probation is sufficient to

revoke probation[]"), the juvenile court exhibited leniency and extended T.B.'s probationary period. Then, following new delinquency allegations, the juvenile court responded by placing T.B. in school-based counseling services provided by Lifeline Youth & Family Services, behavioral therapy in White's Residential and Family Services, and back on home probation with his family. It is apparent that T.B. has not improved his behavior through the plethora of ameliorative programs offered to him.

[18] Furthermore, this Court has held that a delinquent juvenile's placement with the DOC may still be appropriate even if less restrictive alternatives are available. *K.A. v. State*, 775 N.E.2d 382, 386-87 (Ind. Ct. App. 2002). T.B.'s constant run-ins with the law and delinquency adjudications are evidence that he has no interest in rehabilitation through the current least restrictive resources available. And, given T.B.'s dangerous behavior of possessing drug paraphernalia and controlled substances, criminal mischief, resisting law enforcement, disorderly conduct, and deliberately missing court proceedings, placement in the DOC is an appropriate option. *See J.B. v. State*, 849 N.E.2d 714, 718-19 (Ind. Ct. App. 2006) (holding that juvenile's placement in DOC was warranted after violating probation, committing new offenses, and failing to take advantage of prior opportunities for treatment). The juvenile court has already given T.B. numerous chances for reform and could have ordered commitment to the DOC at an earlier time; nevertheless, the juvenile court exhausted all options until it was left with this difficult choice.

The judgment of the juvenile court is affirmed.

Kirsch, J., and Crone, J., concur.