

FILED

Apr 01 2020, 9:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Paula M. Sauer
Danville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| A.C., <br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner.* | April 1, 2020 <br><br> Court of Appeals Case No. 19A-JV-2510 <br><br> Appeal from the Hendricks Superior Court <br><br> The Honorable Karen M. Love, Judge <br><br> Trial Court Cause No. 32D03-1905-JD-70 |

**Friedlander, Senior Judge.**

[1] A.C. appeals the juvenile court's dispositional order, challenging the court's authority to award wardship of him to the Department of Correction (DOC). We affirm.

[2] On May 4, 2019, seventeen-year-old A.C. was involved in an altercation with his father which lead to police being called. Upon being detained in a police vehicle, A.C. spit in his father's face. As a result of this incident, the State filed a delinquency petition alleging that A.C. had committed one count of battery and one count of battery by bodily waste, both Class B misdemeanors if committed by an adult.[1] A.C. admitted to the battery by bodily waste, and the State dismissed the other count of battery. The State and the probation department recommended that A.C. be placed in a residential facility where his behavioral issues, as well as any substance abuse issues and trauma as a result of physical and psychological abuse, could be addressed and where family counseling would be required. A.C. agreed with this recommendation. The juvenile court found A.C. to be a delinquent child, placed him under the supervision of the probation department and in treatment at Transitions Academy and ordered him to serve a four-month term of probation upon completion of the residential treatment. A.C. entered Transitions Academy on May 30.

---

[1] Ind Code § 35-42-2-1 (2018).

[3]     On June 27, the State filed a Motion to Modify Supervision with the juvenile court, alleging that A.C. had violated the dispositional order and the conditions of his probation by leaving the Transitions Academy facility for three days without permission and by testing positive for marijuana. At a hearing on the motion, A.C. admitted that he violated the court's order by leaving the facility without permission. A representative of Transitions Academy testified that the facility was willing to allow A.C. to remain in treatment. The State recommended that A.C. remain at Transitions, and the court ordered A.C.'s continued placement at Transitions.

[4]     On September 12, the State filed a second Motion to Modify Supervision. On this occasion, the State alleged that A.C. had violated the terms of the dispositional order and the conditions of his probation by assaulting other residents on at least three different occasions, failing to fully engage in therapy, refusing to take responsibility for his actions, refusing to engage in an appropriate manner, behaving aggressively, threatening to assault his therapist, using profanity toward staff and court personnel, and failing to control his behavior from escalating. At a hearing on this motion, A.C. admitted to the assault of another resident by kicking him in the head. The CEO of Transitions testified that A.C. had struggled the entire time he had been at the facility. She stated that he was "still not taking any responsibility" and that he "has a very short fuse." Tr. Vol. 2, pp. 98, 99. She further testified that A.C. "poses a risk to others more than [he] poses a risk to himself" because, when he gets very angry, he becomes "very verbally aggressive" and "very physically aggressive."

*Id.* at 99.  Finally, she testified that A.C. could not remain at the facility because he had no interest in engaging in therapy and that he needed a placement that "eliminates all choice for him" and that the only program she knew of that offered that is the DOC.  *Id.* at 101.  Both A.C.'s probation officer and the CEO of Transitions recommended that A.C. be placed in the DOC.  The court accepted A.C.'s admission and modified its original dispositional order to award wardship of A.C. to the DOC.  A.C. now appeals.

[5]     A.C. challenges the juvenile court's authority to commit him to the DOC.  The gist of A.C.'s argument is that his violation of the court's dispositional order and the conditions of his probation is the same as a violation of probation in a criminal case.  Accordingly, he argues the juvenile court had no authority to order him committed to the DOC for a probation violation without a portion of his "sentence" being suspended in the court's original dispositional order.  Appellant's Br. p. 11.  In support of his argument, he cites criminal statutes regarding misdemeanor plea agreements and probation violation and revocation.

[6]     In presenting this argument, A.C. completely overlooks the character of the juvenile system and its differences from the criminal system.  On this topic, our Supreme Court has said:

> [A] juvenile case is a civil and not a criminal matter.  Juvenile adjudications do not constitute criminal convictions.
>
> The nature of the juvenile process is rehabilitation and aid to the juvenile to direct his behavior so that he will not later become a

criminal. For this reason the statutory scheme of dealing with minors is vastly different than that directed to an adult who commits a crime. Juvenile judges have a variety of placement choices for juveniles who have delinquency problems, ranging from a private home in the community, a licensed foster home, a local juvenile detention center, to State institutions such as the Indiana Boys School and Indiana Girls School. None of these commitments are considered sentences.

*Jordan v. State*, 512 N.E.2d 407, 408 (Ind. 1987) (internal citation omitted).

[7] Once a child is determined to be a delinquent child pursuant to either Indiana Code sections 31-37-1-1 (1997) or 31-37-2-1 (1997), the juvenile court is required to hold a dispositional hearing to, among other things, consider the alternatives for the care, treatment, rehabilitation, or placement of the child. Ind. Code § 31-37-18-1 (1997). If the child is determined to be delinquent pursuant to Section 31-37-1-1, as A.C. was in the present case, the juvenile court has the choice of several dispositions and may choose more than one. *See* Ind. Code §§ 31-37-19-5 (2012), -6 (2009). Examples of disposition alternatives are supervision of the child by the probation department, outpatient treatment, emancipation of the child, and community service. *See* Ind. Code § 31-37-19-5(b). Still others are wardship to the DOC, confinement in a juvenile detention facility, and placement in a shelter care facility. *See* Ind. Code § 31-37-19-6(b).

[8] The choice of the specific disposition of a juvenile adjudicated to be delinquent is a matter within the sound discretion of the juvenile court. *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008). The juvenile court is accorded wide latitude and great flexibility in its dealings with juveniles. *Id.* This discretion is,

however, subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition. *M.C. v. State*, 134 N.E.3d 453, 458 (Ind. Ct. App. 2019); *see also* Ind. Code § 31-37-18-6 (1997) (setting forth factors juvenile court must consider when entering a dispositional decree). We will reverse a juvenile disposition only for an abuse of discretion, which occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual inferences drawn therefrom. *C.C. v. State*, 831 N.E.2d 215, 217 (Ind. Ct. App. 2005).

[9] Here, in its first dispositional order, the juvenile court placed A.C. under the supervision of the probation department and ordered placement at Transitions Academy. This was clearly within the court's discretion and statutory powers. *See* Ind. Code §§ 31-37-19-5(b)(1) (juvenile court may, in addition to an order under § 31-37-19-6, order supervision of child by probation department), 31-37-19-6(b)(2)(D) (juvenile court may enter any dispositional decree specified in § 31-37-19-5 and place child in shelter care facility).

[10] The State subsequently filed two motions to modify A.C.'s supervision, alleging that A.C. had violated the terms of his probation. Any change in a juvenile's disposition order, including revoking his probation, is accomplished by modification of the original order pursuant to Section 31-37-22-1 (2017), as the

court did in this case.[2] Following the hearing on the State's second motion to modify supervision, the juvenile court awarded wardship of A.C. to the DOC in its modified dispositional order. This disposition is also a statutory alternative. *See* Ind. Code § 31-37-19-6(b)(2)(A)(i) (juvenile court may award wardship to the department of correction).

[11] Pursuant to the juvenile statutory scheme, probation and wardship to the DOC are just two of several statutory disposition alternatives available to the juvenile court. Section 31-37-19-5(b)(1), under which the court may order supervision of the juvenile by the probation department, does not require a suspended sentence as a prerequisite to the imposition of probation; rather, a term of probation stands alone as a distinct disposition and is treated as any other disposition alternative in the juvenile setting. This is distinct from probation in the criminal setting where probation is a criminal sanction in lieu of imprisonment. *See Bratcher v. State*, 999 N.E.2d 864, 873 (Ind. Ct. App. 2013), *trans. denied*.

---

[2] The juvenile court is required to advise the child and the child's parent, guardian, or custodian of the modification procedures. *See* Ind. Code § 31-37-18-8 (1997). A.C. does not claim that he was not informed of these procedures. Indeed, at A.C.'s fact-finding/disposition hearing he was advised that if he is placed on probation and is later found to have violated a condition of that probation, the court may modify its original dispositional order and impose any of the dispositional options that could have been imposed. Tr. Vol. 2, p. 30. Moreover, A.C. specifically initialed the paragraph in the court's order of probation that states: "If the Court finds that I have violated any conditions of probation, the Court may modify the original dispositional order and impose any of the dispositional options that could have been imposed, to include removal from the home and commitment to secure or residential placement for an indeterminate period." Appellant's App. Vol. 2, p. 63. In addition, at the hearings on the State's motions to modify supervision, the court warned A.C. of the possible consequences of a finding that he violated his probation: "[T]he Court can, uh, change the conditions of your probation. I could order probation to last for a longer period of time. I could change your placement. I could send you to the Department of Correction[ ]." Tr. Vol. 2, p. 55; *see also id.* at 70, 92.

[12] In this case, when A.C. failed to abide by the court's original dispositional order (i.e., comply with the terms of his probation and participate in treatment at Transitions), the court modified its order to award wardship of A.C. to the DOC. In doing so, the court followed the juvenile statutory scheme, which does not require a suspended commitment to the DOC in order for a juvenile to be placed on probation.

[13] Based on the foregoing, we conclude the trial court was within its statutory authority when it modified its original dispositional order and ordered wardship of A.C. to the DOC.

[14] Judgment affirmed.

Robb, J., and Pyle, J., concur.