## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 14 2020, 8:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John M. Haecker
Squiller & Hamilton, LLP
Auburn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

C.M.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner*

August 14, 2020

Court of Appeals Case No.
20A-JV-607

Appeal from the DeKalb Circuit Court

The Honorable Kurt Grimm, Judge

Trial Court Cause Nos.
17C01-1910-JD-44
17C01-2002-JD-7

**Baker, Senior Judge.**

[1] C.M. appeals the dispositional order entered by the juvenile court, arguing that the juvenile court erred by placing C.M. in the Department of Correction (DOC) because less restrictive placements were available. Finding no error, we affirm.

## Facts

[2] In October 2019, C.M. was on probation following an informal adjustment for striking his mother. While on probation, he destroyed some of his mother's personal property and harassed a student at school by encouraging the student to commit suicide. As a result, on October 23, 2019, the State filed a delinquency petition in Cause Number 17C01-1910-JD-044 (JD-44) alleging that C.M. was delinquent for acts that would have been Class B misdemeanor criminal mischief and Class B misdemeanor harassment had they been committed by adults. In December 2019, the juvenile court found C.M. to be delinquent and placed him at White's, a residential treatment program in Wabash.

[3] On February 6, 2020, the State filed a petition to modify C.M.'s dispositional decree. It alleged that during the three months C.M. had been at White's, he had, among other things, threatened to slit another student's throat, hit a peer in the face, engaged in a physical altercation with another student, thrown furniture, threatened self-harm, barricaded himself in his room, threatened staff, left his cottage without permission, thrown a snow-covered rock that hit a staff member in the face, broken into and damaged a locked shed, and spat in the

face of a law enforcement officer. White's refused to permit C.M. to remain at the facility because it could not guarantee the safety of C.M. or the other students if he stayed there.

[4] On February 11, 2020, the State filed a delinquency petition in Cause Number 17C01-2002-JD-7 (JD-7), alleging that C.M. had committed acts that would have been Level 6 felony battery by bodily waste, Class A misdemeanor battery, Class A misdemeanor resisting law enforcement, and Class B misdemeanor criminal mischief had they been committed by an adult. C.M. admitted to throwing the snow-covered rock at the White's staff member, which was the basis of the battery allegation, and the State dismissed the other allegations.

[5] On March 3, 2020, the juvenile court held a combined dispositional hearing for JD-44 and JD-7. C.M.'s probation officer testified at the hearing, explaining that C.M. has a history of tormenting his mother and other family members. She also testified that he was not ready to accept treatment, that he was a danger to himself and the community, and that placement at the DOC was appropriate because he needed a structured, secure environment. According to the probation officer, C.M. has serious mental and emotional health problems, including oppositional defiant disorder, attention deficit disorder, and intermittent explosive disorder.

[6] At the time of the dispositional hearing, C.M.'s relationship with his mother had improved, and he asked to be allowed to be returned home. His probation

officer was skeptical that C.M. would be compliant at home, and the trial court agreed:

> Everything I've seen from you in my courtroom has been defiance from day one. . . . [T]here is no track record of compliance. I have no belief that you would stay at home. I have no belief that you would comply with electronic monitoring. I have no belief that you would voluntarily participate in necessary services in your mother's home. I don't believe any of that.

Tr. Vol. II p. 43. In JD-44, the juvenile court entered a modified dispositional order awarding wardship to the DOC. In JD-77, the juvenile court found that C.M. had committed the equivalent of Class A misdemeanor battery and awarded wardship to the DOC. C.M. now appeals.

## Discussion and Decision

[7] C.M.'s sole argument on appeal is that the trial court erred by ordering that he be committed to the DOC.

[8] We will reverse a juvenile court's placement of a delinquent minor only if the decision is clearly against the logic and effect of the facts and circumstances before it. *C.C. v. State*, 831 N.E.2d 215, 216-17 (Ind. Ct. App. 2005). The choice of a disposition for a juvenile is within the sound discretion of the juvenile court, and it is accorded wide flexibility in making that judgment. *E.L. v. State*, 783 N.E.2d 360, 366 (Ind. Ct. App. 2003). That disposition is subject, however, to the statutory considerations of the welfare of the child, the community's safety, and the policy of favoring the least harsh disposition. *Id.*

[9] Indiana Code section 31-37-18-6(1) states that a juvenile court shall enter a dispositional decree that is "in the least restrictive (most family like) and most appropriate setting available; and . . . consistent with the best interest and special needs of the child[.]" However, even if less restrictive options are available, a juvenile court's placement of a juvenile in the DOC is not erroneous when "earlier attempts at rehabilitation through less restrictive means were unsuccessful." *D.E. v. State*, 962 N.E.2d 94, 97 (Ind. Ct. App. 2011).

[10] The case before us started with C.M. on probation after striking his mother. He violated that probation by committing new offenses of criminal mischief and harassment, which resulted in his placement at White's. While at White's, C.M. amassed a lengthy and serious list of infractions in just three months. He threatened harm to himself and others, caused property damage, broke countless rules, spat on a law enforcement officer, and threw a snow-covered rock at a staff member. As a result, White's refused to allow C.M. to remain there.

[11] It is apparent, therefore, that the early attempts at rehabilitation through less restrictive means have been unsuccessful. Moreover, there is evidence in the record that placement of C.M. in a less restrictive setting (especially in the care of his mother, whom he has physically and emotionally tormented for years) would risk harm to the community and to C.M. and would carry a low likelihood of C.M. attending and complying with the treatment he so clearly needs. Under these circumstances, we find that the juvenile court did not err by ordering that C.M. be placed in the DOC.

[12] The judgment of the juvenile court is affirmed.

Bailey, J., and Vaidik, J., concur.