## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 09 2018, 9:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nancy A. McCaslin
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| A.E.,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | March 9, 2018<br><br>Court of Appeals Case No.<br>20A03-1707-JV-1727<br><br>Appeal from the Elkhart Circuit Court<br><br>The Honorable Michael A. Christofeno, Judge<br>The Honorable Deborah A. Domine, Magistrate<br><br>Juvenile Court Cause No.<br>20C01-1608-JD-323 |

**Baker, Judge.**

[1] A.E. appeals the juvenile court's order committing her to the Department of Correction (DOC). According to A.E., placement in the DOC was contrary to relevant statutory considerations. Finding no error, we affirm.

## Facts

[2] In the months leading up to August 2016, then-sixteen-year-old A.E. began skipping school, smoking and possessing marijuana, destroying property, and refusing to follow rules. She ran away from her father's home for approximately two months; when she returned, she and her father got into a physical altercation. She was then placed with her mother. After she and her mother argued, A.E. went to Safe Station Youth Shelter in South Bend, where she was ultimately asked to leave because of her aggression towards staff. She was then placed in Bashor Children's Home in Goshen.

[3] On August 17, 2016, the State filed a petition alleging that A.E. was delinquent for committing an act that would have been Class B misdemeanor possession of marijuana had it been committed by an adult. A.E. admitted to the allegations of the delinquency petition and was placed under the supervision of the Elkhart Probation Department.

[4] Around the same time, A.E.'s mother reported that A.E. had been sexually abused by her mother's partner. As a result, on August 18, 2016, A.E. was adjudicated a Child in Need of Services (CHINS). On November 2, 2016, A.E. was placed in her father's home.

On December 5, 2016, A.E. ran away from her father's home and her probation officer was unable to locate her. The juvenile court issued a body attachment and nearly three weeks later, A.E. was arrested and placed in juvenile detention. A.E. tested positive for marijuana at that time. The State filed a motion to modify A.E.'s disposition. At the modification hearing on December 29, 2016, the juvenile court found that A.E. had violated probation and ordered her to remain in the juvenile detention center. On January 5, 2017, based on the recommendation of the probation department, the juvenile court released A.E. to her father's care with electronic monitoring.

On March 21, 2017, A.E. was placed in the Bashor Children's Home based on unspecified safety concerns. On March 27, 2017, the probation department reported that A.E. had run away from the shelter and that her whereabouts were unknown. After A.E. was arrested on a body attachment, a modification hearing took place on March 28, 2017. The juvenile court found that A.E. was a flight risk, that she had violated probation, and that continued detention was necessary for her protection.

On April 11, 2017, the juvenile court held another modification hearing. At that hearing, A.E.'s probation officer testified that A.E.'s team of providers had decided that she should remain in the community, return to the care of her father, and continue to participate in therapy. At some point, A.E.'s team became concerned that she was a victim of sex trafficking. Therefore, the juvenile court ordered A.E. to provide all social media passwords to her

probation officer so that all sites could be monitored for signs of sex trafficking. At that time, A.E. remained in the detention facility.

[8] On April 20, 2017, A.E.'s probation officer reported that A.E. had four Facebook accounts and claimed not to know the passwords for two of the accounts. Somehow, the probation officer gained access to one account and found a post stating, in the words of the probation officer, "something along the lines of who wants to make money, message me, this is top secret information." Tr. p. 122. The probation officer contacted the Indiana Trafficking Victim Assistance Program Coordinator, who reviewed the contents of some of A.E.'s social media accounts and found numerous red flags for trafficking. The juvenile court ordered that A.E. would remain in the detention center.

[9] At a May 11, 2017, modification hearing, the probation department recommended that A.E. be released to her father's care and custody on electronic monitoring. The juvenile court agreed and returned A.E. to her father's care.

[10] On June 6, 2017, at another modification hearing, the juvenile court learned that A.E. had been placed in the detention facility for two electronic monitor violations.[1] At the hearing, A.E.'s probation officer reported to the court that

---

[1] A.E. had missed school on one day and had invited a male person over to her house without permission on another day. Tr. p. 145-46.

A.E. had lied to her about being unable to access all of her Facebook accounts. The probation officer reported as follows:

> On May 31 this Officer and Officer Steve Olson were[] investigating A.E.'s Facebook account, a message was located that threw immediate red flags. Both this Officer and Officer Olson began reading the entire message, a 31-year-old man had messaged A.E. trying to recruit her for trafficking. A.E. turned down the offer; however, she gave this man another minor's name, A.G., and even took it a step further and offered to send him A.G.'s nude photos. This Officer also noticed that there was a message between A.E. and[] A.G., in which A.G. did not even know how A.E. had acquired or why A.E. had her nude photos.
>
> In speaking with A.E. about the nude photos, she reported to this Officer that she had ill intentions with the nude photos. These photos were distributed to many people via messenger, by A.E., most not even asking for them. . . .
>
> There was an emergency conference call between [A.E.'s probation officer, therapist, court appointed child advocate, and DCS case manager] to discuss the new information that had been discovered. All agreed that there are many concerning factors and rapid increase in criminal behavior, by soliciting other girls for trafficking.
>
> Probation has major concerns regarding all of this information. First, that A.E. would rather sit in detention for 45 days[2] rather

---

[2] We infer from the record that this forty-five-day-period spanned approximately from March 28 through May 11, 2017.

> than give us the password for the Facebook account. . . . Second, that she just put another youth in an extreme amount of danger.

> ***

> At this point, after soliciting other girls, she is no longer safe to remain in the community. Probation has given A.E. multiple chances in the community to prove that she can be successful; however, she has not been able to and is now converting to major criminal behavior.

> At this time, all services providers agree that [A.E.] should be made a ward of the [DOC] as she continues to place herself and others in danger and is a risk to the community.

*Id.* at 146-49. The juvenile court ordered the probation department to investigate whether A.E. could be placed at the Youth Opportunity Center (YOC), as the court believed that a residential facility that specializes in sex trafficking would be a better placement for A.E. than the DOC.[3]

[11] On June 13, 2017, A.E.'s probation officer reported that A.E. would not be accepted at YOC because it does not accept residents who had engaged in trafficking recruiting activities. YOC's director of admissions suggested that the probation officer contact Lutherwood Children's Home as a possible placement for A.E. But the probation officer learned that to receive treatment at Lutherwood, clients must live in their home communities (rather than in a

---

[3] At that hearing, the juvenile court also closed the CHINS case as it determined that A.E.'s issues would be "best addressed under the delinquency case." Tr. p. 157.

residential placement) because part of the treatment was home-based. YOC and Lutherwood offered the only programs specific for sex trafficking victims in Indiana. At the conclusion of the hearing, the juvenile court ordered A.E. committed to DOC. The juvenile court directed the probation department to inform DOC of A.E.'s recruiting activities to ensure the safety of other DOC wards and ordered that A.E. participate in substance abuse treatment. A.E. now appeals.

## Discussion and Decision

[12] A.E. contends that the juvenile court erred by ordering that she be committed to the DOC. Our Supreme Court has explained that "[t]he specific disposition of a delinquent is within the juvenile court's discretion, to be guided by the following considerations: the safety of the community, the best interests of the child, the least restrictive alternative, family autonomy and life, freedom of the child, and the freedom and participation of the parent, guardian, or custodian." *K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006); *see also* Ind. Code § 31-37-18-6. We will reverse only if the juvenile court's order is against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions that may be drawn therefrom. *Id.* Juvenile courts are accorded wide latitude and great flexibility in their dealings with juveniles. *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008).

[13] A.E. correctly notes that Indiana Code section 31-37-18-6 requires the juvenile court to place the child in the least restrictive setting, but only if that placement

is "consistent with the safety of the community and the best interest of the child." In other words, the statute recognizes that in certain situations, the child's best interest is better served by a more restrictive placement. *K.A. v. State*, 775 N.E.2d 382, 386-87 (Ind. Ct. App. 2002).

[14] In this case, the following evidence was before the juvenile court when it made its determination:

- A.E. repeatedly ran away from her father's home, left her mother's home, and ran away from Bashor Children's Home twice.
- After some of those occasions when she ran away, A.E. tested positive for marijuana.
- A.E. defied a court order by refusing to provide all social media passwords to her probation officer. She even remained in the detention center for over a month rather than provide the passwords, lying that she could not remember them.
- Once her probation officer accessed some of A.E.'s social media accounts, she found content that raised significant red flags that A.E. may have been a victim of sex trafficking.
- Most troublingly, after a 31-year-old man propositioned A.E. online, A.E. turned him down but provided him with the name of another minor, without the knowledge of that minor. She also offered to provide him with nude photographs of that minor. A.E.'s social media accounts reveal that she had provided these photographs to multiple people online.

This evidence readily supports the juvenile court's conclusion that—both for her own safety and the safety of the community—A.E. needs to be in a more restrictive placement than a home or community setting.

[15] To that end, the juvenile court directed the probation department to investigate possible residential placements that focus on victims of sex trafficking. The

probation department found only two such facilities in Indiana. The first refused to accept A.E. because it does not serve clients with a history of recruiting for traffickers; the second was not suitable because its clients must be placed in a home or community setting.

[16] A.E. directs our attention to a report on human trafficking prepared by the Indiana Attorney General in 2016. *See* The 2016 Indiana State Report on Human Trafficking, at https://www.in.gov/attorneygeneral/files/ht%20report%202016.pdf (last visited Feb. 27, 2018). Based on this report, A.E. argues that she "*likely* had options for residential placement that were not thoroughly explored as the court had requested. There *appear to have been* residential options that would have served to address her needs of inappropriate conduct." Appellant's Br. p. 17 (emphases added). But in fact, the report does not name any such facilities, a fact ultimately acknowledged by A.E. *Id.*

[17] Furthermore, there is no support in the record for A.E.'s argument that her probation officer made only "minimal efforts" to find an appropriate facility for A.E. *Id.* at 18. Instead, the record reveals that the probation officer complied with the juvenile court's directive to contact YOC. And when YOC informed the probation officer that it would not accept A.E. as a client, the probation officer then contacted Lutherwood at YOC's suggestion. As a last resort, she contacted a probation service consultant. Neither Lutherwood, YOC, nor a probation service consultant was aware of any other facility that would potentially be suitable as a placement for A.E.

[18]    We find that the evidence in the record supports the juvenile court's determination that A.E. needs to be in a residential placement. We further find no evidence suggesting that A.E.'s probation officer was anything other than diligent in her attempt to locate a residential facility suited to the situation. That the probation officer was unable to find one is unfortunate, but that is the reality with which the juvenile court—and A.E.—had to deal. Under these circumstances, the juvenile court did not err by finding it had no option other than to commit A.E. to the DOC.

[19]    The judgment of the juvenile court is affirmed.


May, J., and Altice, J., concur.