v.

**STATE of Indiana, Appellee–Petitioner.**

No. 49A02–0204–JV–291.

Court of Appeals of Indiana.

Sept. 20, 2002.

Janice L. Stevens, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Respondent, K.A., appeals the juvenile court's order committing her to the Department of Correction (DOC) for placement in the girls school after being on suspended commitment to the DOC.

We affirm.

### ISSUE

K.A. raises two (2) issues for our review, which we restate as follows:

1. Whether the juvenile court abused its discretion in ordering K.A. committed to the DOC for placement in the Indiana Girls School when a less severe disposition, placement in a foster home, was available.

2. Whether the juvenile court properly indicated its reasons for placing K.A. in the girls school.

*FACTS AND PROCEDURAL HISTORY*

On November 16, 2001, K.A., while a student at Broad Ripple High School, punched another person, and, as a result, was suspended from school. In violation of her suspension, K.A. returned to school property on November 19, 2001. After being denied entry by school officials, K.A. attempted to run away from a law enforcement officer who identified himself and ordered her to stop. Consequently, K.A. was charged with battery, a Class A misdemeanor, trespass, a Class D felony, and two (2) counts of resisting law enforcement, both Class A misdemeanors.

Thereafter, on November 20, 2001, K.A. admitted to the battery count as charged and criminal trespass, as a Class A misdemeanor, in exchange for the State's dismissal of both counts of resisting law enforcement. After finding a sufficient factual basis for the plea agreement, the juvenile court adjudicated K.A. a delinquent. K.A. waived the filing of the predispositional report and the court proceeded to disposition. K.A. was placed on formal probation, placed at Lutherwood Residential Treatment Center and ordered to "comply with the plan of treatment and rehabilitation put into place by the DAWN Project." (Tr. p. 7).

On December 10, 2001, the probation department alleged that K.A. had violated her probation by failing to "cooperate, participate and complete [a] Court ordered placement at Lutherwood." (Tr. p. 8). Specifically, the probation department alleged that on November 29, 2001, K.A. had failed to return to Lutherwood after school. The probation department requested that K.A.'s probation be revoked and that an alternative disposition be imposed.

At the probation violation hearing on January 2, 2002, K.A. admitted the alleged violation, explaining that she stayed the night at a friend's house without informing anyone at Lutherwood. The juvenile court found K.A. in violation of her probation and set the dispositional hearing for January 8, 2002.

At the dispositional hearing, the guardian ad litem addressed the court and asked the judge to give K.A. "one more opportunity" by returning K.A. to Lutherwood instead of placing her at the Indiana Girls School. (Tr. p. 13). Although the juvenile court committed K.A. to the DOC for placement in the girls school, it suspended the commitment and ordered her to continue her placement at Lutherwood. However, the court warned K.A. that were she to break any rule or regulation, she would be committed to the girls school.

On January 31, 2002, a case report was prepared by a representative of the DAWN Project. The report indicated that K.A. had been "spending time on the weekends with a foster family that ha[d] expressed interest in taking [K.A.] upon her release from Lutherwood." (Appellant's App. p. 51). The report further provided that the "goal is for [K.A.] to complete her treatment at Lutherwood then transition to foster care." (Appellant's App. p. 51).

On February 19, 2002, K.A.'s probation officer filed an information alleging that K.A. had violated the terms of her suspended commitment. Specifically, it was alleged that K.A. physically assaulted and used profanity at a resident in placement and was placed on "Elopement Precautions" for allegedly planning to run away. (Appellant's App. p. 59).

At the March 19, 2002 hearing, K.A. admitted using profanity at Lutherwood in violation of the facility's rules in exchange for the State's dismissal of the other alleged violations. The State also agreed to make no recommendation as to the disposi-

tion. The juvenile court accepted the plea agreement and proceeded to disposition following K.A.'s waiver of the filing of the predispositional report.

The public defender who represented K.A. made the following recommendation with regard to K.A.'s placement:

Judge I would apparently argue that Lutherwood, while my client was in placement there, did state that my client had been doing better in her school and in her behavior. I know that Gretchen Gentry is here with the Office of Family & Children and is recommending that my client be placed back at the Lutherwood facility. There's a representative here from Lutherwood, that's indicated to me that Lutherwood has filed a notice of discharge on [K.A.], so I, obviously those two things are conflicting in nature. So I would leave it in the Court's discretion as to whether or not my client gets sent back to Lutherwood and, I just ask that she's [sic] be continued on a suspended commitment.

(Tr. p. 22). The guardian ad litem then addressed the court and informed the court that K.A. had been visiting a foster home on a regular basis during her placement at Lutherwood and that the foster mother had requested that K.A. be placed with her. Upon learning of the foster mother's request, the public defender also requested that K.A. be placed with the foster mother, as, according to the public defender, that was the least restrictive placement available.

A representative from the DAWN Project, Ms. Buhner, was also heard by the court and informed the court that Lutherwood was no longer "an appropriate place for [K.A.] at this time" and that "[i]n speaking with staff there, I think [K.A.'s] pretty much come to the end of her treatment, as far as a residential placement." (Tr. p. 24). However, Buhner added that she knew that K.A. wanted a family and wanted to live with her foster mom. Upon hearing that statement, the court asked Buhner if family placement had been tried previously with K.A. Ms. Buhner informed the court that although family placement had not been tried recently, "a foster family ... last summer ... was unsuccessful." (Tr. p. 24–25). Finally, the court heard from the foster mother who stated that she had "had [K.A.] off and on ever since last year" and "enjoyed working with her." (Tr. p. 25).

After considering the testimony, the juvenile court ordered K.A. committed to the DOC for placement in the girls school with a recommended term of six months. K.A. now appeals.

## DISCUSSION AND DECISION

K.A. contends that the juvenile court abused its discretion in committing her to the DOC for placement at the girls school. Specifically, she contends that the court's disposition contravenes the rehabilitative goals of the juvenile code and a statutory mandate that the placement be the least restrictive alternative.

In support of her contention, K.A. first points out that our legislature has set forth certain policies concerning the treatment of juveniles in this state. Those policies are contained in Ind.Code § 31–10–2–1, which provides in pertinent part as follows:

It is the policy of this state and the purpose of this title to:

(1) recognize the importance of family and children in our society;

...

(5) ensure that children within the juvenile justice system are treated as persons in need of care, protection, treatment, and rehabilitation;

...

(7) provide for adoption as a viable permanency plan for children who are adjudicated children in need of services;[1]

. . .

K.A. also refers to I.C. § 31–37–18–6, which sets forth several factors a juvenile court must consider when entering a dispositional decree. That section provides as follows:

If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:

(1) is:

(A) *in the least restrictive* (most family like) and most appropriate setting available; and

(B) close to the parents' home, consistent with the best interest and special needs of the child;

(2) least interferes with family autonomy;

(3) is least disruptive of family life;

(4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

I.C. § 31–37–18–6 (emphasis added). According to K.A., the dispositional order entered by the court "is not consistent with the goals of the juvenile code because incarceration is punitive, not rehabilitative, it is not the least restrictive alternative, and since a foster family was available and willing to take her, the disposition does not support family life or promote adoption." (Appellant's Br. p. 6). K.A. also contends that the comments the juvenile court made

during the dispositional hearing on the probation violation "sound[ed] more punitive than rehabilitative." (Appellant's Br. p. 10).

The State responds that although the girls school "may not be the least restrictive alternative available in the present case, it is an appropriate setting for [K.A.] who has shown disregard for the trial court's rulings and kept violating her probation in spite of the trial court's warnings." (Appellee's Br. p. 5). The State further asserts that K.A.'s placement in the girls school is "consistent with [K.A.'s] best interest and special needs . . . [and will provide] a very structured environment that will impress upon her that there are consequences when she breaks the rules." (Appellee's Br. p. 5).

■ Determining the disposition of a juvenile is committed to the juvenile court's sound discretion "subject to the statutory considerations of the welfare of the child, the community's safety, and the Indiana Code's policy of favoring the least harsh disposition." *E.H. v. State,* 764 N.E.2d 681, 684 (Ind.Ct.App.2002), *reh'g denied.* "A juvenile disposition will not be reversed absent a showing of an abuse of discretion." *Id.* A juvenile court abuses its discretion if its action is "clearly erroneous and against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.*

Without question, I.C. § 31–37–18–6 requires the juvenile court to select the least restrictive placement in most situations. However, the statute contains language which reveals that under certain circum-

1. Although K.A. is currently appealing her placement at the DOC following her adjudication as a delinquent, it appears that she relies upon this factor as she was originally removed from her home in 1994 under a CHINS petition and, most recently, the Office of Family and Children has been attempting to find a family who would be willing to adopt K.A.

stances a more restrictive placement might be appropriate. That is, the statute requires placement in the least restrictive setting only "[i]f consistent with the safety of the community and the best interest of the child." I.C. § 31–37–18–6. Thus, the statute recognizes that in certain situations the best interest of the child is better served by a more restrictive placement. *See Madaras v. State*, 425 N.E.2d 670, 672 (Ind.Ct.App.1981) ("[W]hile the juvenile code creates a presumption in favor of disposing of juvenile matters using the least severe disposition available to the court which will serve the needs of the case, the code explicitly recognizes that in some instances commitment may be in the best interests of the child and society in general.") (citation omitted); *M.R. v. State*, 605 N.E.2d 204, 208 (Ind.Ct.App.1992) (noting that while commitment to the Indiana Boys School "should be resorted to only if less severe dispositions are inadequate, there are times when such commitment is in the best interests of the juvenile and society in general").

■ In this case, the record reveals that K.A. was given several chances to reform her behavior before the juvenile court committed her to the DOC for placement at the girls school. When K.A. was initially adjudicated a delinquent, she was placed on probation. Following a violation of her probation, the court suspended her commitment to the DOC upon the guardian ad litem's recommendation that K.A. be given one more chance. At that time, K.A. was specifically warned by the court that if she did not change her behavior, she would be placed at the girls school. Nevertheless, K.A. violated the terms of her suspended commitment.

As continued placement at Lutherwood was apparently no longer an available op-

tion, the court was then faced with two alternatives—place K.A. with a foster parent or commit her to the DOC for placement at the girls school. Aware that placement with another foster family had proven unsuccessful and that K.A. had been given several chances to reform her behavior, the juvenile court decided to place her at the DOC. Under these circumstances, we cannot say that the juvenile court's decision was an abuse of discretion or that it was not in K.A.'s best interest. *See Matter of Ort*, 407 N.E.2d 1162, 1164–65 (Ind.Ct.App.1980) (concluding that trial court did not abuse its discretion in committing juvenile to the Indiana Boys School, where less severe disposition was available, where juvenile appeared regularly before the trial court and it was in juvenile's best interest to learn that his choices had consequences).

■ Moreover, we cannot agree with K.A.'s contention that placement at the DOC was purely punitive and not rehabilitative. "In some instances, confinement may be one of the most effective rehabilitative techniques available" when a juvenile is exposed to the type of placement she would encounter were she to continue with her poor behavior. *Madaras*, 425 N.E.2d at 672. We also cannot agree that the court's comments at the disposition hearing on the probation violation sounded more punitive than rehabilitative as the court was merely expressing its frustration with K.A.'s failure to reform her behavior. *See id.* Finally, while K.A. contends that the general policy provisions set forth in I.C. § 31–10–2–1 were not met in that the court's decision does not support family life or promote adoption, we would note that there are competing policies, such as promoting individual accountability, set forth in the statute. *See* I.C. § 31–10–2–1(10), (11).[2] In light of these competing

2. I.C. 31–10–2–1(10) provides that it is the

policy of this state to "provide a judicial pro-

policies, the trial court was required to use its discretion in determining what was in K.A.'s best interest.

In a related argument, K.A. argues that the court's dispositional decree contains incorrect information and does not specifically reveal why the court believed incarceration was necessary for K.A. In the dispositional decree of March 19, 2002, following the court's acceptance of K.A.'s plea agreement for violating the terms of her suspended commitment, the court stated as follows:

> The parties advise the Court they wish to rely on the *Pre–Dispositional Report* under Cause Number(s) 49D090111JD005305 and proceed to disposition on today's date.
>
> The Court now adjudicates the Respondent a delinquent, and further finds that said delinquent act(s) would be a crime if committed by an adult, specifically:
>
> Regarding Cause Number 49D090111JD005305 ( [K.A.]/004): VIOLATION SUSPENDED COMMITMENT IGS a Violation.
>
> The Court now orders the findings and information contained in the *Pre–Dispositional Report* incorporated in this order and made the findings of the Court.
>
> The Court bases its reasons for disposition on the findings of fact and, pursuant to I.C. 31–34–19–10 and 31–34–18–9, and [sic] specifically finds as follows:
>
> That the Respondent has a prior history of delinquent activity and true findings in the following cause numbers: 49D090111JD005304 and 49D090111JD005305
>
> That the previous dispositional alternatives available and exercised by the

Court for this Respondent are as follows, to wit:

> Probation
>
> Placement in Home
>
> Suspended Commitment to the Department of Correction
>
> The delinquent act is not heinous or of an aggravating character.

> The Court further finds its disposition is the least restrictive alternative to insure the Respondent's welfare and the safety and welfare of the community.

> The Court, after reviewing the *Pre–Dispositional Report* and hearing statements and evidence presented to the Court regarding the disposition of this cause of action, now finds and order as follows:
>
> The Respondent is in need of care, treatment, rehabilitation or placement.
>
> The parent/guardian/custodian does need to participate in a plan of care or treatment for the Respondent.
>
> Refer to *Pre–Dispositional Report*

(Appellant's App. pp. 68–89) (emphasis added). According to K.A., the court's decree suffers from the following problems:

> All of the references to a pre-dispositional report are erroneous because one was never prepared for the initial battery case or the violations. It's [sic] finding that the violation would be a crime if committed by an adult is incorrect; cursing is not a crime. This is all one case, arising from a battery; there is one cause number, 49D090111JD005305. The court's reference to a criminal history includes two cause numbers, this case and a non-existence [sic] case. Using the

cedure that ... recognizes and enforces the accountability of children and parents" while subsection eleven (11) provides that the

State's policy is to "promote public safety and individual accountability by the imposition of appropriate sanctions."

very case one is being sentenced on as criminal history is illogical. The final findings are rote recitation of statutory language. If [K.A.] did something to justify incarceration, neither the court's order nor the record contains that information.

(Appellant's Br. p. 13).

Initially, we note that pursuant to I.C. § 31–37–18–9, a juvenile court is required to "accompany the court's dispositional decree with written findings and conclusions upon the record concerning ... (1) The needs of the child for care, treatment, rehabilitation, or placement[;] (2) The need for participation by the parent, guardian, or custodian in the plan of care for the child[; and] (3) The court's reasons for the disposition." Apparently, in an effort to comply with the findings requirement, the court attempted to incorporate the information contained in the predispositional report as part of its order,[3] to make that information the findings of the court and, in turn, to use those findings as the reasons for its disposition. Thus, we read K.A.'s contention to mean that the court, by referring to the allegedly non-existent predispositional report, failed to properly enter findings concerning the court's reasons for committing her to the DOC.

■ K.A. correctly asserts that no predispositional report was prepared following her guilty plea to the original charges or prior to her dispositional hearing on the violation of her suspended commitment as, in each instance, K.A. waived the filing of a pre-dispositional report.

Thus, the juvenile court could not have incorporated the information in the predispositional report as its findings or used those findings as the "reasons for the disposition." I.C. § 31–37–18–9(3). Nevertheless, because the record reveals that the court incorporated information, which was contained in other reports and which showed the court's reasons for the disposition, the court's reference to the predispositional report is harmless error.

■ The transcript of the March 19 dispositional hearing reveals that after the court found a sufficient factual basis existed to support K.A.'s admission to violating the terms of her suspended commitment, it waived the filing of the predispositional report upon K.A.'s request, and "incorporat[ed] the preliminary inquiry,[4] the past review summar[ies] and past disposition reports." (Tr. p. 22). The preliminary inquiry, which is an informal investigation into the facts surrounding the allegations of delinquency, was prepared on November 19, 2001. (Appellant's App. pp. 15–19). The inquiry reveals that at the time the inquiry was made, K.A. was living in a group home and was reported to be "very combative, argumentative, and resists authority." (Appellant's App. p. 17). The inquiry also indicates that K.A. had problems at school because "she g[ot] bored easily" and "got into trouble to amuse herself." (Appellant's App. p. 17). In particular, the inquiry showed that K.A. had been suspended four (4) times for disorderly conduct prior to the incident regarding the battery. The inquiry further indi-

---

3. K.A. does not take issue with the court's method of incorporating information into its order and making that information the findings of the court and, therefore, we make no comments concerning the court's action.

4. I.C. § 31–37–8–1 provides that if the prosecutor believes that a child has committed a delinquent act, he shall "instruct the intake officer to make a preliminary inquiry to determine whether the interests of the public or of the child require further action." "Whenever practicable, the preliminary inquiry should include information on the child's: (1) background; (2) current status; and (3) school performance." I.C. § 31–37–8–2.

cated that while K.A. went to class on a regular basis, she left the class if she got bored. Finally, the report indicated that with regard to K.A.'s attitude during the interview for the inquiry, K.A. was "rude and short with probation at the beginning of the interview, but later calmed down and answered probations [sic] questions reasonably." (Appellant's App. p. 18).

In addition to the preliminary report, three review summaries dated December 27, 2001, January 2, 2002, and February 22, 2002, were prepared. The December 27, 2001 review summary reveals that K.A. "reported that she had received another suspension due to using profanity at a teacher" and "was suspended for 3 days total for both suspensions." (Appellant's App. p. 31). The summary also indicated, however, that K.A. indicated that she was "doing well on the dorm and [was] trying to avoid negative behavior." (Appellant's App. p. 31).

The January 2, 2002 review summary indicated that K.A.'s behavior at Lutherwood had fluctuated, that although K.A. had made progress in individual therapy she "'continue[d] to have repercussions due to negative/loud back talk when interacting with others'" and that she had "recently been suspended from school on two occasions due to excessive tardies and using profanity at a teacher." (Appellant's App. p. 37). The review summary further indicated that "[p]robation ha[d] informed [K.A.] that any other problems in school w[ould] result in a violation of her probation being filed." (Appellant's App. p. 37). Finally, the summary indicated that although K.A. did not want to be sent to the DOC, she realized that she "ha[d] been given many chances." (Appellant's App. p. 37).

Finally and most importantly, the February 22, 2002 review summary, which was completed after K.A. violated the terms of her suspended commitment, revealed that "since the youth's last court appearance, [K.A.'s] behavior ha[d] become poor." (Appellant's App. p. 65). The summary further indicated that "Lutherwood and the DAWN Project have stated they are very frustrated with [K.A.'s] lack of motivation, and feel they are working harder than [K.A.] is." (Appellant's App. p. 66). Finally, the review summary indicated that the probation department's recommendation was that K.A. be committed to the DOC.

This information demonstrates that although K.A. had made attempts to reform her behavior, she continued to experience set backs despite the help of the individuals at Lutherwood and the DAWN Project and despite attempts at less restrictive placements. Furthermore, this information, which the court incorporated as its findings through its statement at the dispositional hearing, sufficiently shows that the court decided to place K.A. at the DOC because the placement would enable K.A. to change her behavior. Although we in no way mean to diminish the juvenile court's duty to ensure that its findings are properly set forth, under these circumstances we find that the trial court adequately set forth its findings for the disposition.

Finally, we find K.A.'s claims alleging incorrect information in the dispositional decree to be without merit or consequence. The court's statement that the delinquent act was a crime if committed by an adult refers, we believe, to the initial offenses upon which K.A.'s delinquency adjudication was based, the battery and criminal trespass charges, and not the violation that formed the basis for the court's finding that K.A. had violated the terms of her suspended commitment. The two cause numbers, one of which K.A. claims is nonexistent, refer to the two offenses to which

K.A. initially pled guilty. Although the court eventually consolidated the two offenses under one cause number, 49D090111JD005305, under which the battery was charged, the criminal trespass count was charged under 49D090111JD005304. *See* Transcript at 1–2, 7. Finally, having already concluded that the juvenile court adequately set forth its reasons for the disposition of commitment to the DOC, we need not address K.A.'s other contentions.

## CONCLUSION

Based on the foregoing, we conclude that the juvenile court did not abuse its discretion in committing K.A. to the DOC for placement at the girls school and adequately revealed its reasons for the disposition.

Affirmed.

MATTINGLY–MAY, J., and ROBB, J., concur.