**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CARA SCHAEFER WIENEKE**
Special Asst. to the State Public Defender
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| J.M., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 52A02-1304-JV-361 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MIAMI SUPERIOR COURT
The Honorable Daniel C. Banina, Judge
Cause No. 52D02-1210-JD-44

**October 18, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

## CASE SUMMARY

Appellant-Respondent J.M. appeals from the juvenile court's order placing him with the Department of Correction ("DOC") after he admitted to theft from a Burger King restaurant. J.M. argues that the DOC placement is an abuse of the court's discretion because it is not the least restrictive and most appropriate setting as contemplated by Indiana Code section 31-37-18-6. Appellee-Petitioner the State of Indiana argues that the DOC placement is in J.M.'s best interest and, therefore, need not be the least restrictive or most appropriate setting. We agree with the State. Finding J.M. to have persistently exhibited aggressive, self-destructive, and criminal behavior to the point that all suitable facilities have rejected him for admission to their programs, we conclude that the juvenile court did not abuse its discretion in placing J.M. with the DOC. We affirm.

## FACTS AND PROCEDURAL HISTORY

At all times relevant to this matter, J.M. had been diagnosed with bipolar disorder and attention deficit hyperactivity disorder, for which he was prescribed an ever-changing combination of medications. At certain times, however, J.M. went un-medicated because his medications had expired or run out. An additional diagnosis of oppositional defiant disorder was made during the proceedings below.

At approximately 3:00 a.m. on September 25, 2012, fourteen-year-old J.M. entered a Burger King restaurant after hours, attempted to prepare some food, and consumed several beverages. Burger King employees reported the incident later that day, and police were able to identify J.M. from the restaurant's surveillance video. J.M. was

apprehended on September 26, 2012, and detained in secure custody at the Robert J. Kinsey Youth Center ("the Youth Center"). The State filed a delinquency petition alleging J.M. committed: Count I, burglary, a Class C felony if committed by an adult; and Count II, theft, a Class D felony if committed by an adult. J.M. ultimately entered an admission to Count II, and the State dismissed Count I.

On September 26, 2012, the juvenile court held an emergency detention hearing, during which J.M.'s probation[1] officer, Mandy Miller, testified that "[J.M.] is a danger to himself or others." Tr. p. 6. Officer Miller recommended that J.M. remain detained at the Youth Center because he had violated probation, his juvenile history was extensive, and prior placements had been unsuccessful. J.M.'s father, R.M. ("Father"), also testified at the hearing. Father explained that J.M. had behaved well while living at home and during treatment at Machiana Behavioral Healthcare ("Machiana") but that a new treatment provider had changed his medications. Since then, Father opined, J.M. had been in trouble constantly. Father recommended that J.M. be placed on home detention so that he could return to Machiana for treatment. The juvenile court ordered J.M. detained in secure custody at the Youth Center.

In October of 2012, J.M. was transferred from the Youth Center to a less restrictive facility, Family Services Society ("FSS"), for a psychiatric evaluation. While at FSS, J.M. did not follow staff instructions, threw several temper tantrums, and engaged in sexually inappropriate conduct. At a November 8, 2012 detention hearing, Officer

---

[1] Earlier in 2012, J.M. was separately found delinquent for committing the offenses of battery, theft, and runaway.

Miller testified that J.M. had behaved better with the more restrictive placement at the Youth Center. Father also testified at the hearing and attributed J.M.'s declining behavior to his lack of medication. The court ordered that J.M. be returned to secure custody at the Youth Center.

On December 12, 2012, the trial court held a dispositional hearing. At the hearing, Officer Miller testified as follows regarding J.M.'s behavior at the Youth Center:

> It's been horrific. He's been in constant trouble at Kinsey. He's been locked down numerous times. He's battered someone while he's been at Kinsey. He's disrespectful to staff. He's disrespectful to peers. He's been removed from class on a regular basis. Uh, I think they've locked him down six times since he's been there.

Tr. p. 37. Officer Miller also testified that, because of J.M.'s aggressive behavior, White's Residential and Family Services ("White's") was the only suitable placement that would accept him. When questioned about the possibility of placing J.M. at Machiana, Officer Miller testified that it was unsuitable because J.M. needs a behavioral modification program that Machiana does not provide. When questioned about the possibility of placing J.M. on home detention, Officer Miller expressed concerns with J.M.'s history of running away and his aggressive behavior. The juvenile court ordered J.M. placed at White's and under the supervision of the Miami County Probation Department ("MPCD").

On February 4, 2012, the MCPD filed a verified petition for modification of dispositional decree, requesting that J.M. be removed from White's because of his failure to follow program rules. The juvenile court held a detention hearing that same day, at which Officer Miller testified that J.M. had left White's without permission, stolen

4

things, been in multiple fights, and possessed banned substances. On one occasion, after being confronted about his misbehavior, J.M. returned to his room and started a fire with a toaster. During his forty-seven days at White's, J.M. spent twenty-one days in the disciplinary unit and was involved in at least twenty-three incidents. The juvenile court ordered J.M. returned to secure custody at the Youth Center.

On March 13, 2013, the juvenile court held a dispositional hearing, during which Officer Miller described J.M.'s continued misbehavior at the Youth Center. Officer Miller testified that J.M. threatened to assault peers and staff, urinated on his lunch tray, and flooded his room with toilet water. Officer Miller further testified that she had attempted to find alternate placements for J.M. and had referred him to numerous facilities. But the only facility to accept J.M. was the Lexington Academy, a placement J.M. adamantly opposed. At the hearing, Father again argued that J.M.'s behavior had been appropriate when he was properly medicated, which only occurred during his treatment at Machiana. Father requested that J.M. be placed on home detention so that he could return there.

When questioned about a Machiana placement, Officer Miller testified that the facility did not accept J.M.'s type of cases. With regard to home detention, Officer Miller opined:

> [J.M.] struggles, has struggled in residential placements, he's struggled in secure detention, he's struggle in shelter care. He's struggled previously prior to those placements at home, at his father's home. Uh, at this point I don't feel like home detention is beneficial. In-home detention doesn't offer any sort of long lasting deterrent. It's basically just a way to confine somebody to their home.

Tr. p. 140. Officer Miller further testified that she saw no "viable alternative" except for placement with the DOC. Tr. p. 140.

On April 18, 2013, the juvenile court issued its dispositional order, in which it found, among other things, that home detention "would not provide the structure and care that [J.M.] needs to redirect his poor behavior" and, therefore, "would be contrary to the welfare of the child." Appellant's App. p. 185. The trial court ordered J.M. placed with the DOC.

## DISCUSSION AND DECISION

J.M. argues that the juvenile court abused its discretion in placing him with the DOC. "[T]he juvenile court is accorded wide latitude and great flexibility in its dealings with juveniles[,]" and as such, "the choice of the specific disposition of a juvenile adjudicated a delinquent child … will only be reversed if there has been an abuse of that discretion." *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008). "An abuse of discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual inferences that can be drawn therefrom." *Id.*

"The juvenile court's discretion is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition." *Id.* Indiana Code section 31-37-18-6 controls here and provides:

> If consistent with the safety of the community and the best interest of the
> child, the juvenile court shall enter a dispositional decree that:
>    (1)   is:
>          (A)   in the least restrictive (most family like) and most
>                appropriate setting available; and

6

(B)    close to the parents' home, consistent with the best interest and special needs of the child;

(2)    least interferes with family autonomy;

(3)    is least disruptive of family life;

(4)    imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

(5)    provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

J.M. claims that the DOC placement is neither the least restrictive nor the most appropriate setting available because J.M. exhibited his best behavior while living at home. This claim is misguided.

Indiana Code section 31-37-18-6 "recognizes that in certain situations the best interest of the child is better served by a more restrictive placement." *K.A. v. State*, 775 N.E.2d 382, 387 (Ind. Ct. App. 2002). "[T]here are times when commitment to a suitable public institution is in the best interest of the juvenile and of society." *D.S. v. State*, 829 N.E.2d 1081, 1085 (Ind. Ct. App. 2005) (quotation omitted). Here, the juvenile court determined that the DOC placement and not home detention was in J.M.'s best interest. This determination is supported by the record. Since the initiation of this matter, J.M. has been detained in facilities with varying degrees of restrictiveness and has struggled in all of them. J.M. has continued to exhibit aggressive, self-destructive, and criminal behavior to the point that all but one facility have rejected him for admission to their programs. In light of J.M.'s "horrific" and persistent misbehavior, we hold that the juvenile court did not abuse its discretion in placing J.M. with the DOC.

The judgment of the juvenile court is affirmed.

BAILEY, J., and MAY, J., concur.

7