## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 20 2018, 5:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| J.B., <br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner* | November 20, 2018 <br><br> Court of Appeals Case No. <br> 18A-JV-1118 <br><br> Appeal from the Vanderburgh <br> Superior Court <br><br> The Honorable Brett J. Niemeier, <br> Judge <br><br> Trial Court Cause Nos. <br> 82D04-1711-JD-2080 <br> 82D04-1712-JD-2385 |

**Crone, Judge.**

# Case Summary

[1] J.B. was adjudicated delinquent in two separate causes for offenses amounting to level 6 felony theft of a firearm, level 4 felony child molesting, and level 6 felony intimidation if committed by an adult. The trial court issued a dispositional order placing him in the Department of Correction ("DOC"). In this consolidated appeal,[1] J.B. alleges several due process violations and challenges the court's dispositional decision. Concluding that the trial court acted within its discretion in placing J.B. in the DOC and that J.B. was not denied due process, we affirm the disposition. Notwithstanding, we remand for a more detailed dispositional order in accordance with statute.

# Facts and Procedural History

[2] Seventeen-year-old J.B. has a juvenile criminal history that includes eight referrals and four delinquency adjudications. On August 19, 2017, he and his friend K.O. went to the home of Chiara Berry to spend time with Berry's two teenage daughters, Z.B. and M.B. Z.B. drove the boys to the house and retreated to her bedroom. M.B. was watching a movie with a female friend, but because Berry was at work and had instructed her daughters not to have boys in the house, the group congregated outside. Shortly thereafter, K.O. asked to use the restroom, so the group went inside. After M.B. showed K.O. to the

---

[1] In cause number 82D04-1711-JD-2080 ("Cause 2080"), the State alleged that J.B. was a delinquent for conduct amounting to theft of a firearm. In cause number 82D04-1712-JD-2385 ("Cause 2385"), the State alleged that J.B. was a delinquent for conduct amounting to child molesting and intimidation. The trial court conducted joint factfinding and dispositional hearings, with separate transcripts for each cause. Citations to each transcript will be identified by cause number. The two causes have been consolidated on appeal.

restroom, she and her friend saw J.B. emerge from Berry's bedroom, which had been closed off, and close the door behind him. When M.B. asked what he was doing in her mother's bedroom, he said, "Nothing." Cause 2080 Tr. Vol. 2 at 43. The boys said they needed to leave, and when the girls asked why, they said that their ride was waiting around the corner.

[3] When the boys exited the home, M.B. suspected that J.B. might have taken a handgun that he knew her mother kept in her bedroom. She entered her mother's room, found several drawers open, and discovered that the handgun was no longer in its place in the lingerie drawer. She chased the boys down the street and asked whether they had taken her mother's handgun. She asked to check their pockets, and both boys complied. When she asked them to lift their shirts, J.B. refused. M.B. informed Berry, who reported the handgun as stolen.

[4] A couple weeks later, M.B. saw a Facebook photo of one of J.B.'s friends posing with a handgun that matched Berry's. The Facebook photo was taken down shortly thereafter. On November 7, 2017, the State filed Cause 2080 against J.B., alleging acts amounting to level 6 felony theft of a firearm if committed by an adult. J.B. was placed at home under parental supervision pending the outcome of his referral.

[5] At that time, J.B. was living in a house with his mother, his three siblings, and his mother's boyfriend. The boyfriend has two daughters with whom he has parenting time, and during 2017, the girls regularly stayed at the house on weekends. The younger of the two girls, nine-year-old C.L., suffers from mild

cerebral palsy, epilepsy, and ADHD. A camera and alarm were installed outside the daughters' bedroom door due to an incident in which their father discovered J.B. and nine-year-old C.L. naked in J.B.'s bedroom.

[6] On December 1, 2017, J.B. was out with friends. Because he was not expected to return home that night, the girls' camera and alarm were not activated. J.B. returned to the house sometime during the night and climbed in the bathroom window because he did not have a house key. C.L. and her sister were sleeping in their room. J.B. woke C.L. and asked her to help him find his phone charger. After a few minutes of searching, J.B. placed his hand over C.L.'s mouth, put her down on an empty bed, pulled down her pajama pants, and licked her "private area." Cause 2385 Tr. Vol. 2 at 50. C.L. pleaded with him to stop, and he eventually did. He threatened to kill her if she told anyone. The next morning, C.L. told her father what had happened.

[7] As a result of the incident, J.B. was removed from in-home placement and placed in secure detention on December 11, 2017. On December 26, 2017, the State filed Cause 2385 against J.B., alleging acts amounting to level 4 felony child molesting and level 6 felony intimidation if committed by an adult. At a January 5, 2018 hearing, the parties agreed to a March 5, 2018 factfinding on both causes. Following the joint factfinding, the trial court adjudicated J.B. delinquent on all three charges. The court held a joint dispositional hearing on March 26, 2018, and took matters under advisement. On April 16, 2018, the court issued a dispositional order placing J.B. in the DOC. J.B. now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

## Section 1 – J.B. was not denied due process when he was detained pending his trial.

[8] J.B. claims that he was denied due process in the proceedings below and that these alleged violations resulted in his improper placement in the DOC. Juvenile court proceedings are civil, not criminal, in nature. *T.K. v. State*, 899 N.E.2d 686, 687-88 (Ind. Ct. App. 2009). "[T]he goal of the juvenile process is rehabilitation so that the youth will not become a criminal as an adult." *R.H. v. State,* 937 N.E.2d 386, 388 (Ind. App. Ct. 2010).

[9] J.B. first contends that he was denied due process due to the length of his pretrial detention. He cites as support Indiana Code Section 31-37-11-1, which states, "If a child is in detention, a petition alleging delinquency must be filed not later than seven (7) days, excluding Saturdays, Sundays, and legal holidays, after the child is taken into custody." He claims that because he was placed in detention on December 11, 2017, the State had only until December 20, 2017, to file a delinquency petition in Cause 2385. Thus, he asserts, the State violated the statute and he should have been released.[2] *See* Ind. Code § 31-37-11-7 (if child is in detention and statutory time limits are not followed, child shall be released on recognizance or to parent, guardian, or custodian).

---

[2] For purposes of calculating days pursuant to the statute, which excludes weekends and holidays, December 26 was ten days after J.B.'s December 11 detention.

[10] At first glance, J.B.'s argument appears meritorious. However, upon deeper examination, we find his formulaic application of the seven-day rule to be misplaced. On December 11, 2017, J.B. was already the subject of a delinquency referral in Cause 2080, for which the petition had been filed in November and for which he had been placed at home under parental supervision pending his factfinding. In other words, the filing of the Cause 2080 petition *preceded* his detention. The gravity of the new allegations and the fact that J.B. was alleged to have committed the criminal acts in his home while on in-home placement necessitated an immediate change in his placement under Cause 2080. As such, his December 11 detention more accurately reflects a change in his placement in Cause 2080 than an initial placement in Cause 2385. Thus, the seven-day filing requirement was not implicated by the December 26 filing of Cause 2385.

[11] J.B. also alleges as a due process violation the State's failure to hold a factfinding hearing within the statutorily mandated time limit. Indiana Code Section 31-37-11-2(a) states that if a child is in detention and a petition has been filed, a factfinding hearing must be commenced no more than twenty days (excluding weekends and holidays) after the filing of the petition. According to J.B., the State was required to hold his factfinding hearing no later than January 26, 2018, and violated his due process rights by not holding a hearing until March 5, 2018. The State claims that J.B. waived and/or invited the error. We agree. The record shows that during a January 5, 2018 joint hearing on both causes, the parties agreed to a March 5, 2018 trial date for both causes. *See*

Cause 2080 Tr. Vol. 2 at 11-12 and Cause 2385 Tr. Vol. 2 at 6-7 ("BY AGREEMENT OF THE PARTIES, TRIAL IS SET MARCH 5, 2018 AT 8:00 A.M."). J.B. not only failed to object to a trial date beyond the twenty-day time limit, but he affirmatively agreed to it. Therefore, he invited the error and cannot now take advantage of it, even under a claim of due process. *See Brewington v. State*, 7 N.E.3d 946, 975 (Ind. 2014) (invited error doctrine forbids party from "taking advantage of an error that he 'commits, invites, or which is the natural consequence of [his] own neglect or misconduct.'") (quoting *Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005)); *see also Pigg v. State*, 929 N.E.2d 799, 803 (Ind. Ct. App. 2010) (due process rights are subject to waiver and may not be raised for first time on appeal), *trans. denied*. Based on the foregoing, we conclude that J.B.'s pretrial detention did not amount to a denial of due process.

## Section 2 – The trial court did not abuse its discretion in placing J.B. in the DOC.

[12] J.B. also maintains that he was denied due process when the trial court imposed the harshest disposition based on "scant information." Appellant's Br. at 4. Although he frames this argument in terms of due process, it essentially amounts to a challenge to the trial court's decision to place him in the DOC. The disposition of a juvenile adjudicated a delinquent is a matter committed to the trial court's discretion, subject to the statutory considerations of the child's welfare, community safety, and the policy favoring the least harsh disposition. *R.H.*, 937 N.E.2d at 388. We review the trial court's dispositions for an abuse

of discretion, which occurs if its decision is clearly against the logic and effect of the facts and circumstances before it or the reasonable inferences that may be drawn therefrom. *Id.*

[13] Indiana Code Section 31-37-18-6 reads,

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
> (A) in the least restrictive (most family like) and most appropriate setting available; and
>
> (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

[14] In assessing the evidence in the record, we first address J.B.'s assertion that the trial court never ordered a predispositional report. Indiana Code Section 31-37-13-2(a)(2) requires the trial court, upon making a delinquency determination, to

order a predispositional report. The report must include certain information relevant to placement alternatives as well as the probation officer's recommendation. Ind. Code §§ 31-37-13-2, 31-37-17-6.1. In its dispositional order, the trial court referenced "having reviewed the predispositional report." Appellant's App. Vol. 2 at 32. We cannot find any such report in the record, and it is unclear whether the court failed to order one or whether one was ordered but simply not submitted. In either case, the trial court erred in attempting to incorporate information included in a predispositional report that was not part of the record. *K.A. v. State*, 775 N.E.2d 382, 389 (Ind. Ct. App. 2002), *trans. denied*. That said, we note that the trial court relied on other probative and undisputed evidence in the record in making its placement decision, thus rendering its error harmless. *See id*. (court's reference to nonexistent predispositional report held harmless where court relied on other reports and information concerning disposition).

[15] At J.B.'s dispositional hearing, the trial court asked probation officer Leah Alvey whether she had anything she would like to add to her preliminary report and original recommendation. Officer Alvey responded, "I'm just asking that [J.B.] be committed to the Indiana Department of Correction. It's because of the seriousness of the offenses, the child molest, intimidation, theft of a firearm. He's had eight referrals to this Court before." Cause 2080 Tr. Vol. 2 at 61; Cause 2385 Tr. Vol. 2 at 67. Officer Alvey's preliminary report is included in the appendix and provides background information concerning J.B.'s eight juvenile allegations and four true findings, three of which involved acts

amounting to felonies if committed by an adult. Appellant's App. Vol. 2 at 16. It also includes the following summary concerning J.B.'s family and living arrangements:

> Juvenile resides with his mother, and her boyfriend Antoni[o] Neighbors, and his three siblings. Mother reports juvenile exhibits serious behavioral problems at home, and does not get along well with her or his siblings. Juvenile has little contact with his father. Juvenile feels he can do as he pleases and causes much dysfunction in the family.

*Id*. at 19. As for J.B.'s education, the report indicates that he was expelled from school in eleventh grade and was enrolled in virtual school, where he earned four out of seventeen attempted credits and missed forty-three days of school in the current academic school year. *Id*. The report also mentions J.B.'s admission that he uses marijuana daily. *Id*. at 20. The report further indicates that J.B. has continued to be involved in delinquent activities, is beyond the control of the parent, and poses a danger to others. *Id*. at 22.

[16] In challenging his placement in the DOC, J.B. essentially argues that the court should have ordered in-home detention with parental supervision. However, in-home placement had already proven to be a failure, as it was during such placement that J.B. was permitted/expected to be out overnight, broke in through a bathroom window, and molested C.L. in his own home. At the dispositional hearing, J.B.'s mother testified that although she still cohabits with C.L.'s father, J.B.'s presence would not present a danger to C.L. or her sister because their father is no longer legally permitted to have parenting time with

them at his home. While this reasoning might suffice concerning the issue of "opportunity" to commit future criminal acts against C.L. or her sister, it does not account for the broader problem of the lack of parental supervision and control over J.B. Nor does the fact that J.B. is doing well in the DOC militate toward in-home placement. Rather, it reflects a placement decision well made, in keeping with the goal of rehabilitation. As such, we find no abuse of discretion in the court's decision to place J.B. in the DOC and affirm its disposition decision.

## Section 3 – The trial court's written dispositional order does not include findings sufficient to satisfy Indiana Code Section 31-37-18-9(a).

[17] Finally, J.B. asserts that the trial court failed to include statutorily required findings in its dispositional order. Indiana Code Section 31-37-18-9(a)(5) requires the trial court to state its reasons for the disposition chosen. This involves the trial court's issuance of written findings and conclusions concerning the child's care, treatment, rehabilitation, or placement; parental participation in the plan; efforts made to prevent the child's removal from the parent; family services offered; and the court's reasons for its disposition. Ind. Code § 31-37-18-9(a)(1)-(5).

[18] Here, the trial court's dispositional order includes only one finding:

> THAT SAID CHILD IS BEYOND THE CONTROL OF
> PARENT/GUARDIAN; THAT THERE DOES NOT EXIST
> ANY VIABLE OPTIONS FOR THE CARE AND
> TREATMENT OF SAID CHILD IN THE COMMUNITY.

Appellant's App. Vol. 2 at 32. This finding is both cursory and conclusory and fails to meet the requirements of Indiana Code Section 31-37-18-9(a)(1)-(5). As discussed, the record includes information sufficient to support the trial court's ultimate placement decision. However, we remand with instructions for the court to issue a detailed written order with findings and conclusions as specified in the statute.[3]

[19] Affirmed and remanded.

Najam, J., and Pyle, J., concur.

---

[3] J.B. also raises a due process argument claiming a right to be present when the trial court announces its dispositional decision. However, he cites no authority specifically applicable to juveniles, and we know of no authority imposing such a requirement in the context of juvenile dispositional orders. Moreover, when the trial court stated that it would take the matter under advisement and issue its order within a few days, J.B. neither objected nor asked to be present when the court announced its placement decision. As such, he waived the issue for consideration on appeal. *See B.R. v. State*, 823 N.E.2d 301, 306 (Ind. Ct. App. 2005) (juvenile's failure to make timely objection concerning jurisdictional issue resulted in waiver when raised for first time on appeal).