## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 21 2019, 10:07 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David L. Joley
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| D.W.,<br>*Appellant-Respondent,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Petitioner* | November 21, 2019<br><br>Court of Appeals Case No.<br>19A-JV-1087<br><br>Appeal from the Allen Superior Court<br><br>The Honorable Andrea R. Trevino, Judge<br><br>The Honorable Carolyn S. Foley, Magistrate<br><br>Trial Court Cause No.<br>02D07-1710-JD-1136 |

**Crone, Judge.**

# Case Summary

D.W., a delinquent child, appeals his placement with the Indiana Department of Correction ("IDOC"). He contends that the juvenile court abused its discretion in placing him with the IDOC and that the court could have chosen a less restrictive placement. We disagree and affirm.

# Facts and Procedural History

On October 20, 2017, then-fifteen-year-old D.W. became angry with his mother so he grabbed her by the throat, pushed her into a bedroom, and would not let her out. He also punched her in both thighs. His mother called the police to report the domestic battery. D.W. left the scene, but officers located him walking down the street away from the residence. Police escorted D.W. back to the residence and interviewed both him and his mother. D.W. was taken into custody and transported to the Allen County Juvenile Center ("ACJC").

The State filed a petition alleging that D.W. was a delinquent child for committing battery, an act that would be a crime if committed by an adult. Following a detention review hearing, D.W. was placed on "Informal Operational Probation with family counseling and Critical Thinking." Appellant's App. Vol. 2 at 62. On March 26, 2018, a petition was filed alleging that D.W. failed to attend school in violation of the terms of his informal probation. The juvenile court held a detention review hearing and placed D.W. on the "Detention Alternative Program" with an ankle monitor. *Id.* On May 1, 2018, D.W. was arrested for a new offense of "Leaving Home." *Id.*

Following a detention review hearing on the new case, D.W. was referred to counseling. However, D.W. was ordered detained at the ACJC on his prior case and ordered to participate in the "[T]hinking [E]rrors" program and to undergo a psychological assessment. *Id.* Thereafter, D.W. was ordered placed on conditional release to his father's home on the Detention Alternative Program with an ankle monitor. Following a final factfinding, D.W. admitted that he committed the offense of domestic battery and was adjudicated a delinquent child. He was continued on the Detention Alternative Program with an ankle monitor and was ordered to participate in random urinalysis and to take his medications as prescribed.[1]

[4] On August 29, 2018, a probation officer conducted a home visit at D.W.'s father's home. D.W.'s father reported that D.W.'s behaviors were becoming more and more aggressive and that D.W. had made physical threats against both him and D.W.'s brother. D.W.'s father also reported that D.W. was not taking his medication as ordered by the juvenile court. Following a detention review hearing, the juvenile court revoked D.W.'s conditional release and ordered him detained at the ACJC.

[5] A dispositional hearing was held on September 25, 2018. The juvenile court placed D.W. on suspended commitment to the IDOC pending his compliance with the rules of formal probation and family counseling. In March 2019, a petition for modification was filed alleging that D.W. had violated the terms of

---

[1] D.W. had been diagnosed with attention deficit hyperactivity disorder and oppositional defiant disorder.

his probation by failing to abide by all laws and failing to attend school regularly. During a hearing on the petition to modify, D.W. admitted to one of the violations, and the juvenile court found D.W. to be a violent offender. The court ordered that D.W. temporarily remain at the ACJC and participate in educational services, a psychological assessment, and Thinking Error classes.

[6] Thereafter, the juvenile court held a dispositional hearing. In addressing D.W., the court noted that he had been "given some fairly significant services through the years … through three separate informal adjustments … all of which were deemed unsuccessful due to the commission of new offenses." Tr. Vol. 2 at 11. The court noted its disappointment that D.W. had been involved in recent physical altercations while at the ACJC. The court explained to D.W.,

> You've had probation. You've had informal adjustment. You've had formal. You've had placement. You've had counseling, counseling, counseling, counseling. You've been in counseling since you were, what? Eight? … With you choosing not to utilize the skills that I know that you've learned, you're giving me absolutely no choice here.

*Id*. at 13-14. The court then accepted the recommendation of the probation department and ordered D.W. committed to the IDOC "for housing in a correctional facility for children."[2] Appealed Order at 2. This appeal ensued.

---

[2] According to the juvenile court, Allen County's "Juvenile D.O.C." is similar to a "secure residential treatment facility" that "has a much lower recidivism rate than adult [DOC] does." Tr. Vol. 2 at 15.

## Discussion and Decision

[7] D.W. appeals the juvenile court's dispositional decree. "A juvenile court is accorded 'wide latitude' and 'great flexibility' in its dealings with juveniles." *J.T. v. State*, 111 N.E.3d 1019, 1026 (Ind. Ct. App. 2018) (citation omitted), *trans. denied* (2019). The choice of a specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court and will be reversed only if there has been an abuse of that discretion. *Id*. "The juvenile court's discretion in determining a disposition is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least-harsh disposition." *Id*. An abuse of discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before it. *Id*.

[8] The goal of the juvenile process is rehabilitation, not punishment. *Id*. Indiana Code Section 31-37-18-6 sets forth the following factors that a juvenile court must consider when entering a dispositional decree:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
> (A) in the least restrictive (most family like) and most appropriate setting available; and

(B) close to the parents' home, consistent with the best interest and special needs of the child;

(2) least interferes with family autonomy;

(3) is least disruptive of family life;

(4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

As is evident by the above-quoted statutory language, although Indiana Code Section 31-37-18-6 requires that a juvenile be placed in the "least restrictive" and most appropriate setting available, it also requires that such placement be "consistent with the safety of the community and the best interest of the child." Thus, "the statute recognizes that in certain situations the best interest of the child is better served by a more restrictive placement." *K.A. v. State*, 775 N.E.2d 382, 387 (Ind. Ct. App. 2002), *trans denied*.

[9] Here, the record reveals that D.W. was given numerous opportunities at rehabilitation and reformation of his behavior before the juvenile court finally placed him with the IDOC. Specifically, D.W. repeatedly violated the terms of numerous less restrictive placement alternatives. The juvenile court provided a thoughtful and thorough explanation for its disposition and its belief that D.W.'s best interest would be better served by placement with the IDOC. We find no abuse of discretion. The juvenile court's dispositional order is affirmed.

Affirmed.

Baker, J., and Kirsch, J., concur.