## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 10 2019, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Karyn Price
Lake County Juvenile Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

I.C.,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

December 10, 2019

Court of Appeals Case No.
19A-JV-1468

Appeal from the Lake Superior Court

The Honorable Thomas P. Stefaniak, Jr., Judge

The Honorable Jeffrey Miller, Magistrate

Trial Court Cause No.
45D06-1708-JD-485
45D06-1708-JD-503

**Bailey, Judge.**

# Case Summary

[1] I.C. was adjudicated a delinquent and, following a series of less-restrictive placements, was placed in the Indiana Department of Correction ("the DOC"). I.C. appeals, presenting the sole issue of whether the juvenile court abused its discretion by placing him in the DOC. We affirm.

# Facts and Procedural History

[2] On August 24, 2017, then fifteen-year-old I.C. was arrested. The State alleged that I.C. had committed acts that would be Possession of Marijuana, as a Class B misdemeanor, and Intimidation, as a Class A misdemeanor, if committed by an adult. I.C. was released to the custody of his mother.

[3] Five days later, I.C. was again arrested. The State alleged that I.C. had committed acts that would be possession of a knife on school property, a Class B misdemeanor, two counts of disorderly conduct, Class B misdemeanors, and Intimidation, as a Class A misdemeanor, if committed by an adult. I.C.'s mother refused to have I.C. released into her custody, and the juvenile court ordered that I.C. be retained at the Lake County Juvenile Detention Center ("the Detention Center").

[4] On October 24, 2017, I.C. admitted to possession of marijuana and disorderly conduct; the remaining allegations were dismissed. On October 31, 2017, the juvenile court ordered that I.C. be placed on probation and housed at Rites of Passage-DePaul Academy. On February 6, 2018, I.C. was removed from the

academy and placed in the Detention Center. On February 22, 2018, I.C. was placed in George Junior Republic, a residential facility located in Pennsylvania. On March 29, 2019, juvenile probation filed a petition for modification, requesting that I.C. be placed in the DOC. On May 23, 2019, the juvenile court granted the petition for modification. I.C. now appeals.

# Discussion and Decision

[5] The juvenile court has discretion to choose the specific disposition of a juvenile adjudicated a delinquent "subject to the statutory consideration of the welfare of the child, the community's safety, and the Indiana Code's policy of favoring the least harsh disposition." *C.T.S. v. State*, 781 N.E.2d 1193, 1202 (Ind. Ct. App. 2003). We will not reverse a juvenile court's disposition unless the juvenile court abuses its discretion. *Id.* The juvenile court abuses its discretion if its action is "clearly erroneous and against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *D.B. v. State*, 842 N.E.2d 399, 404-05 (Ind. Ct. App. 2006).

[6] Indiana Code Section 31-37-18-6 provides:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:

(A) in the least restrictive (most family like) and most
appropriate setting available; and

(B) close to the parents' home, consistent with the best
interest and special needs of the child;

(2) least interferes with family autonomy;

(3) is least disruptive of family life;

(4) imposes the least restraint on the freedom of the child and the
child's parent, guardian, or custodian; and

(5) provides a reasonable opportunity for participation by the
child's parent, guardian, or custodian.

[7] We have previously noted that this section requires that the juvenile court select the least restrictive placement in most situations. *D.B.*, 842 N.E.2d at 405. "However, the statute contains language which reveals that under certain circumstances a more restrictive placement might be appropriate." *K.A. v. State*, 775 N.E.2d 382, 386-87 (Ind. Ct. App. 2002), *trans. denied*. Indeed, the statute requires placement in the least restrictive setting only if such placement is "consistent with the safety of the community and the best interest of the child." Ind. Code § 31-37-18-6. As such, "the statute recognizes that in certain situations the best interest of the child is better served by a more restrictive placement." *K.A.*, 775 N.E.2d at 387.

[8] I.C. has a history of unsuccessful placements. Within days of the filing of the initial delinquency petition and I.C.'s return to his mother's custody, he was arrested for harassing and threatening passengers on a school bus. I.C. called the responding officer "a n---a and a bitch." (App. Vol. II, pg. 31.) When I.C. was taken into custody, he was searched and found to be in possession of a knife. I.C.'s mother declined to resume custody of I.C., requesting a boot camp placement. I.C. was instead placed in the Detention Center, where he became involved in physical altercations with other residents.

[9] At the Detention Center, I.C. submitted to a psychological evaluation; it was recommended that he be placed in a residential facility for juveniles. I.C. entered the Right of Passage-DePaul Academy in November of 2017. On January 22, 2018, juvenile probation filed a petition for modification. The academy had requested I.C.'s removal for conduct including: threatening staff and peers; cursing at staff; throwing gang signs; assaulting a peer; attempting to assault a staff member; and lack of cooperation with programming.

[10] The petition for modification of placement was granted and I.C. was transported to George Junior in Pennsylvania. On March 15, 2018, I.C. was admitted to the Special Needs Unit at George Junior. Beginning the next day, the staff at George Junior reported that I.C. exhibited behavioral issues. These included displaying anger, aggression, and disrespect toward peers and staff, as well as refusal to follow instructions, complete homework, or cooperate with tests. I.C. was transferred within George Junior to the Intensive Supervision Unit, where he remained for approximately three months. I.C. progressed

sufficiently that he was moved back to the Special Needs Unit and he was eventually granted home passes. However, this privilege was forfeited when I.C. exhibited further behavioral problems. He was temporarily placed in the Crisis Intervention Unit.

[11] On January 11, 2019, juvenile probation recommended that I.C. be placed in an Open Campus Program at George Junior. I.C. participated in this less restrictive program for approximately one month. However, I.C.'s conduct in the school environment and cottage environment caused him to be returned to the Special Needs Unit. Juvenile probation staff met with I.C. to advise him that a recommendation for placement in the DOC was imminent. Probation staff and George Junior personnel agreed that I.C. could be given an opportunity to "turn things around." (App. Vol. II, pg. 242.)

[12] On April 3, 2019, the George Junior Campus Director issued an e-mail to juvenile probation indicating that I.C. had become "impossible to manage" due to oppositional behaviors and disrespect. *Id.* Allegedly, he threatened both staff and peers in an effort to secure placement in the Crisis Intervention Unit. At the hearing conducted on April 30, 2019, evidence was adduced that George Junior was unwilling to accept I.C. back into their program and they had no services to offer that had not previously been tried. Approximately one week before I.C. was placed in the DOC, juvenile probation filed a report indicating that other juvenile facilities were also unwilling to accept I.C.

I.C. argues that less restrictive placements were available. But there does not appear to be a less restrictive placement that is able to serve I.C.'s needs. Ultimately, the juvenile court was severely limited in the options for I.C. given his unsuccessful placement history. We cannot say that the juvenile court abused its discretion.

Affirmed.

Kirsch, J., and Mathias, J., concur.